B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS<br>Teresa Jean Moore & Robert-Garvin: Moore (818) 206-1146<br>8685 Queens Brook Court<br>Las Vegas, Nevada 89129 | DEFENDANTS<br>John R. Gschwend; Barry L. Goldner; Kurt Van Sciver; Ryan A. Andersen; OCWEN LOAN SERVICING, LLC; DEUTSCHE BANK NAT. TRUST CO., as Indenture Trustee for AHMIT |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>NONE | ATTORNEYS (If Known)<br>UNKNOWN |
| PARTY (Check One Box Only)<br>■ Debtor      □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor    □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>□ Debtor      □ U.S. Trustee/Bankruptcy Admin<br>■ Creditor    □ Other<br>□ Trustee |

| CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)<br>AVOIDANCE AND RECOVERY OF THE FRAUDULENT TRANSFER UNDER THE 11 U.S.C. §§ 548(a)(1)(A); 548(a)(1)(B); 544(a)(3); 547(b); 544(b); 545; 549; 551; 542 and 543 |
|---|

**CCC**

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative causes as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☑ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☑ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☑ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case -- 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ 260,500.00 |

| Other Relief Sought<br>constructive or resulting trust; accounting |
|---|

2014 OCT 17 AM 3 58
RECEIVED AND FILED
U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Teresa Jean Moore & Robert-Garvin: Moore | BANKRUPTCY CASE NO.<br>14-13791 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Nevada | DIVISION OFFICE | NAME OF JUDGE<br>Landis |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

*Teresa J Moore*

| DATE<br>October 17, 2014 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Teresa Jean Moore |
|---|---|

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Teresa Jean Moore
Robert-Garvin: Moore
8685 Queens Brook Court
Las Vegas, Nevada 89129
Tel: 818-206-1146
Fax: 818-647-1186
Net: teresa_j_moore@yahoo.com

*For the Plaintiffs in the propria persona*

# United States Bankruptcy Court
District of Nevada
300 Las Vegas Boulevard South, Las Vegas, Nevada 89101

| | |
|---|---|
| In re        Teresa Jean Moore<br>             Robert-Garvin: Moore        Debtors. | Bankruptcy Case: 14-13791<br>Chapter 11 |

| | |
|---|---|
| Teresa Jean Moore,<br>Robert-Garvin: Moore,<br><br>                                      Plaintiffs<br><br>              v.<br><br>John R. Gschwend;<br>Barry L. Goldner;<br>Kurt Van Sciver;<br>Ryan A. Andersen;<br>OCWEN LOAN SERVICING, LLC;<br>DEUTSCHE BANK NATIONAL TRUST<br>COMPANY, as Indenture Trustee for American<br>Home Mortgage Investment Trust 2006-3;<br>Does 1-10<br><br>                                      Defendants. | Adversary Proceeding:<br><br>**COMPLAINT**<br>(**1**) FOR THE AVOIDANCE AND RECOVERY OF THE FRAUDULENT TRANSFER UNDER THE 11 U.S.C. § 548(a)(1)(A);<br>(**2**) FOR THE AVOIDANCE AND RECOVERY OF THE FRAUDULENT TRANSFER UNDER THE 11 U.S.C. § 548(a)(1)(B);<br>(**3**) FOR THE AVOIDANCE AND RECOVERY OF THE FRAUDULENT TRANSFER UNDER THE 11 U.S.C. § 544(a)(3);<br>(**4**) FOR THE AVOIDANCE AND RECOVERY OF THE PREFERENTIAL TRANSFER UNDER THE 11 U.S.C. § 547(b);<br>(**5**) FOR THE AVOIDANCE AND RECOVERY OF THE TRANSFER UNDER THE 11 U.S.C. §§ 544(b) AND 545;<br>(**6**) FOR THE AVOIDANCE AND RECOVERY OF THE POST-PETITION TRANSFER UNDER THE 11 U.S.C. § 549;<br>(**7**) FOR THE PRESERVATION OF THE TRANSFERS UNDER THE 11 U.S.C. § 551;<br>(**8**) FOR THE TURNOVER OF THE ESTATE PROPERTY UNDER THE 11 U.S.C. § 542 OR THE 11 U.S.C. § 543;<br>(**9**) FOR THE VIOLATION OF THE AUTOMATIC STAY UNDER THE 11 U.S.C. § 362(k);<br><br>EXHIBITS E01 – E06 |

## COMPLAINT

The Plaintiffs Teresa Jean Moore (TJM) and Robert-Garvin: Moore (RGM), as the debtors-in-possession in the Chapter 11 Bankruptcy Case: 14-13791, commence this adversary proceeding against the defendants by the affirmation of the following:

## JURISDICTION AND VENUE

1. The cause of the adversary proceeding arises under the Title 11 of the United State Code (U.S.C.) by the claims (1) for the avoidance and recovery of the fraudulent transfers under the 11 U.S.C. § 548(a)(1)(A); (2) for the avoidance and recovery of the fraudulent transfers under the 11 U.S.C. § 548(a)(1)(B); (3) for the avoidance and recovery of the unperfected transfers under the 11 U.S.C. §§ 544(a)(3); (4) for the avoidance and recovery of the preferential transfers under the 11 U.S.C. § 547(b); (5) for the avoidance of the unperfected liens under the 11 U.S.C. §§ 544(b) and 545; (6) for the avoidance and recovery of the post-petition transfer under the 11 U.S.C. § 549; (7) for the preservation of the fraudulent transfers under the 11 U.S.C. § 551; (8) for the turnover of the estate property under the 11 U.S.C. § 542 or the 11 U.S.C. § 543; (9) for the violation of the automatic stay under the 11 U.S.C. § 362(k).

2. The nature of the adversary claims are a core matter under the 28 U.S.C. § 157 by the arising under the Title 11 or the arising in or related to a case under the Title 11.

3. The Part VII (Rule 7001 et seq.) of the Federal Rules of Bankruptcy Procedure (F.R.B.P.) governs the conduct of the adversary proceeding by the procedure of the bankruptcy rules.

4. The United States Bankruptcy Court (Court) has the jurisdiction of the adversary proceeding by the authority of the 28 U.S.C. § 1334.

5. The District of the Nevada is the proper venue of the adversary case by the authority of the 28 U.S.C. § 1409(a).

6. The parties of the defendants submitted to the jurisdiction of the Court by the filing of their motions and by the making of their appearances during the conduct of the bankruptcy case.

## PARTIES

7.    The Plaintiffs are natural persons with a business office at the 8685 Queens Brook Court, Las Vegas, Nevada 89129.  The Plaintiffs commenced the action of the Bankruptcy Case 14-13791 by the filing of the Chapter 11 Voluntary Petition with the U.S. Bankruptcy Court, District of Nevada on the May 29, 2014. The Plaintiffs are the debtors-in-possession of the bankruptcy estate and have the standing of the trustee by the authority of the 11 U.S.C. § 1107 and F.R.B.P 6009.

8.    The Defendant John R. Gschwend (JRG) is a natural person with a business address at the Post Office Box 757, Pearl City Hawaii 96782.

9.    The Defendant Barry L. Goldner (BLG) is a natural person with a business address at the 4550 California Avenue, 2nd Floor, Bakersfield, California 93309.

10.    The Defendant Kurt Van Sciver (KVS) is a natural person with a business office at the 4550 California Avenue, 2nd Floor, Bakersfield, California 93309.

11.    The Defendant Ryan A. Andersen (RAA) is a natural person with a business office at the 415 South 6th Street, Suite 203B, Las Vegas, NV 89101.

12.    The Defendant OCWEN LOAN SERVICING, LLC (OLS) is an artificial person with a business office at the Post Office Box 24737, West Palm Beach, Florida 33416-9838.

13.    The Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY (DBN), as Indenture Trustee for American Home Mortgage Investment Trust 2006-3, is an artificial person with a business office at the 1761 East Saint Andrew Place, Santa Ana, CA 92705.

14.    The Plaintiffs are ignorant of the names, capacities and statuses of the Defendants Does 1 – 10 and therefore sue these defendants by the fictitious names.  The Defendants Does 1 – 10 are responsible for the injuries and the damages by the conduct of their wrongful actions.  The Plaintiffs will amend the Complaint upon the discovery of the names, capacities, relationships and liabilities of the Defendants Does 1 – 10.

## FACTS

### General Allegations

15.    The adversary proceeding concerns the house and land at the 13307 Providence Place, Bakersfield, California (property) with the legal description: "Lot 34 of Tract No. 6007, Unit Three, in

the City of Bakersfield, County of Kern, State of California, as per Map recorded November 25, 2003 in Book 50, Page 132 of Maps, in the Office of the County Recorder of said County."

16. On the May 29, 2014, the Plaintiffs commenced the action of the Bankruptcy Case No. 14-13791 by the filing of the VOLUNTARY PETITION with the U.S. Bankruptcy Court, Nevada District. On the original Schedule G, the Plaintiff identified the property as the subject of an executory contract and unexpired leases. On the Second Amended Schedule A, the Plaintiffs identified the property as the subject of an "[e]quitable and possessory interest by [the] substantial performance of [a] purchase agreement." On the Second Amended Schedule B, the Plaintiffs identified the property as the subject of the various claims in the amount of the $50,000.00.

### Transfer Allegations

17. On the information and belief of the Plaintiffs, on the November 30, 2010, the U.S. Bankruptcy Court, Delaware District confirmed the Chapter 11 liquidation plan of the AMERICAN HOME MORTGAGE HOLDING, INC., which was the purported owner of the loan against the property, by the entry of an order in the Bankruptcy Case 07-11047-CSS (Jointly Administered).

18. On the February 2, 2011, the Defendant DBN received the transfer of an interest in the property from the Non-Party MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) by the recording of the ASSIGNMENT OF DEED OF TRUST. The attachment **E01** is a copy of the Trust Deed Assignment, which the Defendant DBN recorded in the Office of the Kern County Recorder on the February 2, 2011.

19. In the summer of the 2011, the Plaintiffs met the Defendant JRG on a flight from the Los Angeles, California to the Honolulu, Hawaii. The Defendant JRG was a high school classmate of the Plaintiff RGM. During the conversation, the Defendant JRG stated that property was in foreclosure and that he was moving back to Hawaii. Over the next two-years, the Plaintiffs entered into a series of contracts for the assistance of the JRG relocation, for the stopping of the property foreclosure, for the securing of a loan modification and for the consummation of a property purchase.

20. In or around the December 2011, the Plaintiff TJM entered into an agreement with the Defendant JRG by the execution of a CONSULTING AGREEMENT for the provision of the consulting and coaching services in the filed of the foreclosure defense strategies. Among the terms,

the agreement called for a five-year rental of the property with the automatic right to extend and the sublease of the property to an "owner occupant who would like to purchase subject to the foreclosure."

21.    On the January 1, 2012, the Plaintiff TJM entered into an agreement with the Defendant JRG for the 5-year lease of the property by the execution of a RESIDENTIAL LEASE AGREEMENT.

22.    Over the following two-years, the Plaintiffs tendered more than $260,500.00 in the form of payments and the services to the benefit of the Defendant JRG for the property purchase after the successful completion of a loan modification.

23.    On the July 7, 2011, the Defendant DBN requested the relief from the automatic stay in the Bankruptcy Case 12-15485-ES (*In re Jorgina Valdivieso*) by the filing of the MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362.  The attachment **E02** is a copy of the Stay Relief Motion, which the Defendant DBN filed in the Bankruptcy Case 12-15485-ES (*In re Jorgina Valdivieso*) on the July 7, 2011.  The Exhibits 4-8 show five transfers of the property to other parties by the Defendant JRG as the co-trustee of the JOHN R. & SALINA E. GSCHWEND REVOCABLE TRUST between the July 25, 2011 and the March 6, 2012.

24.    On or about the April 10, 2013, the Plaintiff TJM made the transfer of an interest in the property by the execution of a substituted lease agreement in the support of a loan modification with the Defendant OLS.  The attachment **E03** is a copy of the Substituted Lease Agreement, which the Plaintiff TJM executed on the April 10, 2013 and submitted to the Defendant OLS.

25.    On the October 2, 2013, the Defendant OLS made the transfer of an interest in the property by the purport of the LOAN MODIFICATION AGREEMENT.  The attachment **E04** is a copy of the Loan Modification Agreement, which the Defendant OLS published and mailed to the Defendant JRG on or about the October 2, 2013.

26.    On the November 25, 2013, the Defendant Gschwend made the transfer of an interest in the property by the purport of the LEASE TERMINATION NOTICE.  The attachment **E05** is a copy of the Lease Termination Notice, which the Defendant JRG transmitted to the Plaintiffs by the mail on or after the November 25, 2013.

27.    On the information and belief of the Plaintiffs, on or about the May 7, 2014, the Defendants JRG, BLG and KVS commenced the action of the unlawful detainer in the Civil Case S-

1500-CL-284906 (*Gschwend v. Moore*) by the filing of the complaint with the Superior Court of California, County of Kern.  Although the Plaintiff TJM has never received a copy of the Summons and Complaint, the Defendants JRG, BLG and KVS continued with the action of the case by the entry of the Judgment and by the issuance of the Writ of Possession on the July 21, 2014.  The attachment **E06** is a copy of the Civil Case Docket, which the Plaintiffs obtained from the online service of the court on the October 15, 2014.

**28.**    On the September 26, 2014, the Defendants JRG, BLG, KVS and RAA obtained the relief from the automatic stay in the Bankruptcy Case No 14-13791 by the entry of the ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY.

**29.**    October 16, 2014, the Kern County Sheriff proceeded with the execution of the Writ of Possession by the posting of the NOTICE TO VACATE.

**30.**    The Plaintiffs are in the possession of the property by the right of the Substituted Lease Agreement and by the right of the substantial performance of the Oral Purchase Agreement.

<u>**FIRST-CLAIM**</u>

**For The avoidance and recovery of the fraudulent transfers**

**under the 11 U.S.C. § 548(a)(1)(A) against the Defendants JRG and OLS**

**31.**    The Plaintiffs incorporate the matter of the paragraphs 1 through the 30 by the reference of this statement.

**32.**    Under the 11 U.S.C. § 548(a)(1)(A), "[t]he trustee may avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily … made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted."

**33.**    Within the 2-years before the date of the petition filing, the Defendants JRG and OLS made the transfer of an interest of the Plaintiffs in the property or an obligation incurred by the Plaintiffs.

**34.**    The Plaintiffs voluntarily or involuntarily made the transfer or incurred the obligation

with the actual intent to hinder, delay, or defraud an entity, which the Plaintiffs were indebted on or after the date that such transfer was made or such obligation was incurred.

35.   Therefore, the transfers of the Defendants JRG and OLS are fraudulent and the Plaintiffs may avoid the transfers and recover the property under the 11 U.S.C. § 548(a)(1)(A) for the benefit of the bankruptcy estate under the 11 U.S.C. § 550(a).

### SECOND-CLAIM

**For The avoidance and recovery of the fraudulent transfers**

**under the 11 U.S.C. § 548(a)(1)(B) against the Defendants JRG and OLS**

36.   The Plaintiffs incorporate the matter of the paragraphs 1 through the 35 by the reference of this statement.

37.   Under the 11 U.S.C. § 548(a)(1)(B), "[t]he trustee may avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily … received less than a reasonably equivalent value in exchange for such transfer or obligation; was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured."

38.   Within the 2-years before the date of the petition filing, the Defendants JRG and OLS made the transfer of an interest of the Plaintiffs in the property or an obligation incurred by the Plaintiffs.

39.   The Plaintiffs received less than a reasonably equivalent value from the Defendants JRG and OLS in the exchange for the transfer or the obligation.

40.   The Plaintiffs were insolvent on the date that the transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

41.   The Plaintiffs were engaged in a business or a transaction, or was about to engage in business or a transaction, for which any property remaining was an unreasonably small capital.

**42.**    The Plaintiffs intended to incur, or believed that they would incur, debts that would be beyond their ability to pay as such debts matured.

**43.**    Therefore, the transfers of the Defendants JRG and OLS are fraudulent and the Plaintiffs may avoid the transfers and recover the property under the 11 U.S.C. § 548(a)(1)(B) for the benefit of the bankruptcy estate under the 11 U.S.C. § 550(a).

## THIRD-CLAIM

### For The avoidance and recovery of the unperfected transfers or liens

### under the 11 U.S.C. §§ 544(a)(3) against the Defendants JRG, OLS and DBN

**44.**    The Plaintiffs incorporate the matter of the paragraphs 1 through the 43 by the reference of this statement.

**45.**    Under the 11 U.S.C. § 544(a)(3), "[t]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists."

**46.**    The Plaintiffs, as the debtors-in-possession, have the rights and powers of a bona fide purchaser of real property at the commencement of the bankruptcy case.

**47.**    The transfers of the interest in the property by the Defendants DBN and OLS were void and unperfected at the commencement of the bankruptcy case by the violation of the New York Trust Law, by the affect of the Chapter 11 liquidation before the transfer and by the nullity of the MERS beneficiary nomination.

**48.**    The transfers of the interest in the property by the Defendant JRG was void and unperfected at the commencement of the bankruptcy case by the affect of the recorded transfers before the making of the agreements with the Plaintiff TJM.

**49.**    The Defendants JRG, OLS and DBN asserted their claims or interests against the property, which were unperfected at the commencement of the bankruptcy case.

**50.** Therefore, the transfers of the Defendants JRG, OLS and DBN are unperfected and the Plaintiffs may avoid the transfers and recover the property under the 11 U.S.C. § 544(a)(3) for the benefit of the bankruptcy estate under the 11 U.S.C. § 550(a).

## FOURTH-CLAIM

### For The avoidance and recovery of the preferential transfers

### under the 11 U.S.C. § 547(b) against the Defendants JRG, BLG, KVS, OLS and DBN

**51.** The Plaintiffs incorporate the matter of the paragraphs 1 through the 50 by the reference of this statement.

**52.** Under the 11 U.S.C. § 547(b), "the trustee may avoid any transfer of an interest of the debtor in property--to or for the benefit of a creditor; for or on account of an antecedent debt owed by the debtor before such transfer was made; made while the debtor was insolvent … on or within 90 days before the date of the filing of the petition; or between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and that enables such creditor to receive more than such creditor would receive if--the case were a case under chapter 7 of this title; the transfer had not been made; and such creditor received payment of such debt to the extent provided by the provisions of this title."

**53.** Within the 90-days before the date of the filing of the petition, the Defendants JRG, BLG, KVS, OLS and DBN made the transfer of an interest of the Plaintiffs in property by the maintenance of their claims in the public record.

**54.** The Defendants JRG, BLG, KVS, OLS and DBN made the transfers for the benefit of a creditor on the basis of an antecedent debt owed by the Plaintiffs while they were insolvent.

**55.** Therefore, the Plaintiffs may avoid the transfers of the Defendants JRG, BLG, KVS, OLS and DBN as preferential and recover the property under the 11 U.S.C. § 547(b) for the benefit of the bankruptcy estate under the 11 U.S.C. § 550(a).

## FIFTH-CLAIM

### For The avoidance and recovery of the unperfected liens

### under the 11 U.S.C. §§ 544(b) and 545 against the Defendants JRG, BLG, KVS, OLS and DBN

**56.** The Plaintiffs incorporate the matter of the paragraphs 1 through the 55 by the reference

of this statement.

57.     Under the 11 U.S.C. § 544(b), "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."

58.     Under the 11 U.S.C. § 545(2), "[t]he trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists."

59.     The Defendants JRG, BLG, KVS, OLS and DBN hold an unsecured claim that is allowable under section 502 or that is not allowable only under section 502(e).

60.     The Plaintiffs made the transfer or incurred the obligation, which is voidable under the law, for the benefit of the Defendants JRG, BLG, KVS, OLS and DBN.

61.     The Plaintiffs received less than a reasonably equivalent value from the Defendants JRG, OLS and DBN in the exchange for the transfer or the obligation.

62.     The Plaintiffs were insolvent on the date that the transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

63.     Therefore Plaintiff may avoid the unperfected or unenforceable transfers of the Defendants JRG, BLG, KVS, OLS and DBN under the 11 U.S.C. § 544(b) (and under the California Civil Code §§ 3439.05 and 3439.07) and the Plaintiffs may recover the property or the value of the property, exclusive of any liens and encumbrances for the benefit of the bankruptcy estate under the 11 U.S.C. § 550(a).

## SIXTH-CLAIM

### For the avoidance and recovery of the post-petition transfers

### under the 11 U.S.C. § 549 against the Defendants JRG, BLG, KVS, OLS and DBN

64.     The Plaintiffs incorporate the matter of the paragraphs 1 through the 63 by the reference of this statement.

65.     Under the 11 U.S.C. § 549(a), "the trustee may avoid a transfer of property of the

1    estate--(1) that occurs after the commencement of the case."

2    **66.**    After the commencement of the case, the Defendants JRG, BLG, KVS, OLS and DBN

3    made the transfer of an interest of the Plaintiffs in property by the maintenance of their claims in the

4    public record.

5    **67.**    Therefore, the Plaintiffs may avoid the post-petition transfers of the Defendants JRG,

6    BLG, KVS, OLS and DBN and recover the property under the 11 U.S.C. § 549 for the benefit of the

7    bankruptcy estate under the 11 U.S.C. § 550(a).

8    ## SEVENTH-CLAIM

9    ### For the preservation of the fraudulent transfers

10    ### under the 11 U.S.C. § 551 against the Defendants JRG, BLG, KVS, OLS and DBN

11    **68.**    The Plaintiffs incorporate the matter of the paragraphs 1-67 by the reference of this

12    statement.

13    **69.**    Under the 11 U.S.C. § 551, "[a]ny transfer avoided under section 522, 544, 545, 547,

14    548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the

15    benefit of the estate but only with respect to property of the estate."

16    **70.**    Therefore, the Plaintiff may preserve the avoided transfers of the Defendants JRG,

17    BLG, KVS, OLS and DBN for the benefit of the estate under the 11 U.S.C. § 551.

18    ## EIGHTH-CLAIM

19    ### For the turnover of the estate property

20    ### under the 11 U.S.C. §§ 542 or 543 against the Defendants JRG, BLG, KVS, OLS and DBN

21    **71.**    The Plaintiffs incorporate the matter of the paragraphs 1-70 by the reference of this

22    statement.

23    **72.**    Under the 11 U.S.C. § 542(a), "an entity, other than a custodian, in possession, custody,

24    or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this

25    title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and

26    account for, such property or the value of such property, unless such property is of inconsequential

27    value or benefit to the estate."

28    **73.**    Under the 11 U.S.C. § 543(a), "A custodian with knowledge of the commencement of a

case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property."

74.    The Defendants JRG, BLG, KVS, OLS and DBN had the knowledge of the commencement by the receipt of the actual notice.

75.    The Defendants JRG, BLG, KVS, OLS and DBN are either an entity or a custodian and are in the possession, custody, or control of the property that the trustee may use, sell, or lease under the Section 363.

76.    Therefore, the Defendants JRG, BLG, KVS, OLS and DBN must turnover the property to the bankruptcy estate by the delivery of the property and by the accounting for the property under the 11 U.S.C. §§ 542 or 543.

## NINTH CLAIM

### For the violation of the automatic stay

### under the 11 U.S.C. § 362(k) against the Defendants JRG, BLG, KVS and RAA

77.    The Plaintiffs incorporate the matter of the paragraphs 1-76 by the reference of this statement.

78.    Under the 11 U.S.C. § 362(k), "an individual injured by any willful violation of a stay … shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." "If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages."

79.    On the information and belief of the Plaintiffs, on or about the May 7, 2014, the Defendants JRG, BLG and KVS commenced the action of the unlawful detainer in the Civil Case S-1500-CL-284906 (*Gschwend v. Moore*) by the filing of the complaint with the Superior Court of California, County of Kern.

80.    On the May 29, 2014, the Plaintiffs commenced the action of the Bankruptcy Case No. 14-13791 by the filing of the VOLUNTARY PETITION with the U.S. Bankruptcy Court, Nevada

1 | District.

2 | **81.** The Defendants JRG, BLG and KVS continued the action of the unlawful detainer by
3 | the entry of the Judgment and the issuance of the Writ of Possession on the July 21, 2014.

4 | **82.** On the September 26, 2014, the Defendants JRG, BLG, KVS and RAA obtained the
5 | relief from the automatic stay by the entry of the order.

6 | **83.** On the October 16, 2014, the Kern County Sheriff proceeded with the execution of the
7 | Writ of Possession by the posting of the Notice To Vacate.

8 | **84.** The Defendants JRG, BLG, KVS and RAA had the actual knowledge of the bankruptcy
9 | case and failed to vacate the proceedings in the state court action.

10 | **85.** The continuation of the proceedings in the state court action after the commencement of
11 | the bankruptcy case is a willful violation of the automatic stay under the 11 U.S.C. § 362(k).

12 | **86.** As a direct result of the willful violation of the automatic stay, the Plaintiffs suffer the
13 | wrong of the money damages and the emotional distress in an amount to be proven at the trial.

14 | **RELIEF**

15 | WHEREFORE, the Plaintiffs request the entry of a judgment against the defendants by the
16 | following:

17 | (1) For the avoidance and recovery of the fraudulent transfers under the 11 U.S.C. §
18 | 548(a)(1)(A) against the Defendants JRG and OLS with a declaration and order for the
19 | annulment and purging of the transfers from the public record.

20 | (2) For the avoidance and recovery of the fraudulent transfers under the 11 U.S.C. §
21 | 548(a)(1)(B) against the Defendants JRG and OLS with a declaration and order for the
22 | annulment and purging of the transfers from the public record.

23 | (3) For the avoidance and recovery of the unperfected transfers or liens under the 11 U.S.C. §
24 | 544(a)(3) against the Defendants JRG, OLS and DBN with a declaration and order for the
25 | annulment and purging of the transfers or liens from the public record.

26 | (4) For the avoidance and recovery of the preferential transfers under the 11 U.S.C. § 547(b)
27 | against the Defendants JRG, BLG, KVS, OLS and DBN with a declaration and order for
28 | the annulment and purging of the transfers or liens from the public record.

(5)  For the avoidance and recovery of the unperfected liens under the 11 U.S.C. §§ 544(b) and 545 against the Defendants JRG, BLG, KVS, OLS and DBN with a declaration and order for the annulment and purging of the transfers or liens from the public record.

(6)  For the avoidance and recovery of the post-petition transfers under the 11 U.S.C. § 549 against the Defendants JRG, BLG, KVS, OLS and DBN with a declaration and order for the annulment and purging of the transfers or liens from the public record.

(7)  For the preservation of the fraudulent transfers for the benefit of the estate under the 11 U.S.C. § 551.

(8)  For the turnover of the estate property under the authority of the 11 U.S.C. § 542 or the 11 U.S.C. § 543 with a declaration and order for the accounting of any proceeds and the turnover of the property.

(9)  For the imposition of the automatic stay or an injunction against the defendants.

(10) For the imposition of a constructive or resulting trust for the bankruptcy estate.

(11) For any other relief that the Court deems just and proper.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

Date: 10 / 17 / 14

Teresa Jean Moore
Robert-Garvin: Moore
8685 Queens Brook Court
Las Vegas, Nevada 89129
Tel: 818-206-1146
Fax: 818-647-1186
Net: teresa_j_moore@yahoo.com



RECORDING REQUESTED BY
Recording Requested By
ServiceLink
AND WHEN RECORDED MAIL TO

AMERICAN HOME MORTGAGE
SERVICING,INC.
4875 Belfort Road, Suite 130
Jacksonville, FL 32256

**James W. Fitch, Assessor – Recorder**    TELFORDT
Kern County Official Records                2/22/2011
                                            8:00 AM
Recorded at the request of
Public

| DOC#: | 0211023058 | Stat Types: 1 | Pages: 1 |
|---|---|---|---|
| | | Fees | 12.00 |
| | | Taxes | 0.00 |
| | | Others | 0.00 |
| | | PAID | $12.00 |

---

Trustee Sale No.1 REDACTED    Loan No. REDACTED    Title Order No REDACTED

Space above this line for recorder's use only

**ASSIGNMENT OF DEED OF TRUST**

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2006-3 all beneficial interest under that certain Deed of Trust dated as of June 15, 2006 executed by JOHN R. GSCHWEND AND SALINA E. GSCHWEND, HUSBAND AND WIFE , as Trustor; to CHICAGO TITLE COMPANY, as Trustee; and Recorded on June 30, 2006 with recorder's reference 0206160334 of official records in the Office of the Recorder of Kern County, California.

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust including the right to have reconveyed, in whole or in part, the real property described therein.

DATE:   DEC 2 8 2010

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: _Elizabeth Boulton_   Elizabeth Boulton
      Vice President

STATE OF: _____ **Florida**

COUNTY OF: _____ **Duval**

On DEC 2 8 2010   before me, _____ **Rosemarie Boren** _____, Notary Public, personally appeared _____ Elizabeth Boulton _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ **Florida** _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Rosemarie Boren_
Notary Signature   Rosemarie Boren

ROSEMARIE BOREN
MY COMMISSION # DD690003
EXPIRES: May 14, 2013
Fl Notary Discount Assoc. Co.

---

| Attorney or Party Name, Address, Telephone & FAX Nos. State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Prober & Raphael, A Law Corporation<br>Lee S. Raphael, Esq., Bar ID: 180030<br>Cassandra J. Richey, Esq., Bar ID: 155721<br>Melissa Vermillion, Esq., Bar ID:241354<br>Joseph Garibyan, Esq., Bar ID: 271833<br>Bonni S. Mantovani, Esq., Bar ID: 106353<br>Laleh Ensafi, Esq., Bar ID: 268917<br>Jeannette R. Marsala, Esquire #253125<br>Nina Z. Javan, Esquire #271392<br>20750 Ventura Boulevard, Suite 100<br>Woodland Hills, CA 91364<br>Telephone: 818-227-0100<br>Facsimile: 818-227-0101<br>cmartin@pralc.com<br><br>☑ *Attorney for Movant*<br>☐ *Movant appearing without an attorney* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA_____ DIVISION**

| In re<br><br>JORGINA VALDIVIESO,<br><br><br><br><br><br><br><br>Debtor(s) | CASE NO.: 8:12-bk-15485-ES<br>CHAPTER: 7<br><br>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (WITH SUPPORTING DECLARATIONS) REGARDING REAL PROPERTY**<br><br>DATE: 09/18/2012<br>TIME: 9:30 am<br>COURTROOM: 5A<br>PLACE: U.S. Bankruptcy Court<br>     411 W. Fourth Street, 5th Floor<br>     Santa Ana, California 92701-4595 |

**MOVANT** (*name of*): Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2006-3

**Movant is the (*check one*)**
☐   Holder of Deed of Trust
☑   Assignee of Holder of Deed of Trust
☐   Servicing Agent for Holder of Deed of Trust or Assignee of Holder of Deed of Trust

1.   NOTICE IS HEREBY GIVEN to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the above date and time and in the stated courtroom, Movant in the above-captioned matter will move this court for an Order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

2.   Hearing Location:   ☐ 255 East Temple Street, Los Angeles     ☑ 411 West Fourth Street, Santa Ana
                         ☐ 21041 Burbank Boulevard, Woodland Hills  ☐ 1415 State Street, Santa Barbara
                         ☐ 3420 Twelfth Street, Riverside

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2011                                    Page 1                        F 4001-1.MOTION.RP

**EXHIBIT-E02            STAY RELIEF MOTION            Page 1 of 51**

3.  a.  ☑  This Motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1  If you wish to oppose this Motion, you must file a written response to this Motion with the court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of this Motion.

   b.  ☐  This Motion is being heard on SHORTENED NOTICE.  If you wish to oppose this Motion, you must appear at the hearing.  Any written response or evidence may be filed and served:

       ☐ at the hearing     ☐ at least _____ days before the hearing.

   (1)  ☐  A Motion for Order Shortening Time was not required according to the calendaring procedures of the assigned judge.

   (2)  ☐  A Motion for Order Shortening Time was filed pursuant to LBR 9075-1(b) and was granted by the court, and such motion and order have been or are being served upon the Debtor and trustee, if any.

   (3)  ☐  A Motion for Order Shortening Time has been filed and is pending.  Once the court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion, if any.

4.  You may contact the clerk's office to obtain a copy of an approved court form for use in preparing your response (*Optional Court Form F 4001-1M.RES*), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

5.  If you fail to file a written response to the Motion, if required, or fail to appear at the hearing, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Date: 07/11/2012 _____

Respectfully submitted,
Deutsche Bank National Trust Company, as Indenture Trustee
for American Home Mortgage Investment Trust 2006-3
_____
Movant name

Prober & Raphael, A Law Corporation
_____
Printed name of law firm (*if applicable*)

/s/ Jeannette Marsala
_____
Signature of individual Movant or attorney for Movant

Jeannette R. Marsala, Esquire #253125
_____
Printed name of individual Movant or attorney for Movant

This form is mandatory  It has been approved for use by the United States Bankruptcy Court for the Central District of California

*December 2011*                                Page 2                                **F 4001-1.MOTION.RP**

**EXHIBIT-E02**                    **STAY RELIEF MOTION**                    **Page 2 of 51**

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

1.  **The Property at Issue:** Movant moves for relief from the automatic stay with respect to following real property (the Property):

    Street address: 13307 Providence Place
    Unit/suite no.:
    City, state, zip code: Bakersfield, CA 93314

    Legal description or document recording number (including county of recording): APN: 495-360-12.

    Doc. # 0206160334, filed/recorded in official records, Recorder's Office, Kern County, California.

    ☐ See attached continuation page.

2.  **Case History:**

    a.  ☑ A voluntary petition   ☐ An involuntary petition
        under chapter   ☐ 7   ☐ 11   ☐ 12   ☑ 13 was filed on (*specify date*): 5/1/2012

    b.  ☑ An Order of Conversion to chapter   ☑ 7   ☐ 11   ☐ 12   ☐ 13
        was entered on (*specify date*): 6/11/2012

    c.  ☐ Plan, if any, was confirmed on (*specify date*): _____

    d.  ☑ Other bankruptcy cases affecting this Property were pending within the past two years. See attached declaration.

3.  **Grounds for Relief from Stay:**

    a.  ☐ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

        (1) ☐ Movant's interest in the Property is not adequately protected.

            (a) ☐ Movant's interest in the collateral is not protected by an adequate equity cushion.

            (b) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

            (c) ☐ No proof of insurance re Movant's collateral has been provided to Movant, despite borrower's(s') obligation to insure the collateral under the terms of Movant's contract with Debtor.

            (d) ☐ Payments have not been made as required by an Adequate Protection Order previously granted to Movant.

        (2) ☑ The bankruptcy case was filed in bad faith to delay, hinder, and defraud Movant.

            (a) ☐ Movant is the only creditor or one of very few creditors listed on the Debtor's master mailing matrix.

            (b) ☐ Non-individual entity was created just prior to bankruptcy filing for the sole purpose of filing bankruptcy.

            (c) ☐ The Debtor filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the petition and a few other documents. No other Schedules or Statement of Financial Affairs (or chapter 13 Plan, if appropriate) have been filed.

            (d) ☑ Other (*see attached continuation page*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2011                                   Page 3                         F 4001-1.MOTION.RP

**EXHIBIT-E02**              **STAY RELIEF MOTION**                    **Page 3 of 51**

    (3) ☐ *(Chapter 12 or 13 cases only)*

        (a) ☐ Postconfirmation plan payments have not been made to the standing trustee.

        (b) ☐ Postpetition payments due on the note secured by a deed of trust on the Property have not been made to Movant.

    (4) ☑ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor has/have no equity in the Property, and pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), Debtor has/have failed within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☑ Pursuant to 11 U.S.C. § 362(d)(4), Debtor's filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved:

    (1) ☑ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☑ Multiple bankruptcy filings affecting the Property.

4    ☐ Movant also seeks annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached declaration(s).

5.    **Evidence in Support of Motion:** *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*

a. ☑ Movant submits the attached declaration(s) on the court's approved forms *(if applicable)* to provide evidence in support of this Motion pursuant to the LBR.

b. ☐ Other declaration(s) are also attached in support of this Motion.

c. ☐ Movant requests that the court consider as admissions the statements made by Debtor under penalty of perjury concerning Movant's claims and the Property set forth in Debtor's schedules. Authenticated copies of the relevant portions of the schedules are attached as Exhibit _____.

d. ☑ Other evidence *(specify):* Grant Deeds - Exhibits 4, 5, 6, 7 & 8. _____

6.    ☑ An optional Memorandum of Points and Authorities is attached to this Motion.

**WHEREFORE, Movant prays that the court issue an Order terminating or modifying the stay and granting the following** *(specify forms of relief requested)*:

1. Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2. **Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor via telephone or written correspondence to offer such an agreement. Any such agreement shall be nonrecourse unless stated in a reaffirmation agreement.**

3. ☐ Annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached declaration(s).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2011          Page 4          F 4001-1.MOTION.RP

**EXHIBIT-E02**          **STAY RELIEF MOTION**          **Page 4 of 51**

4. ☑ Additional provisions requested:
   a. ☑ That the 14-day stay described by FRBP 4001(a)(3) is waived.

   b. ☑ That Extraordinary Relief be granted as set forth in the Attachment (*attach Optional Court Form F 4001-1M.ER*).

   c. ☑ For other relief requested, see attached continuation page.

5.   If relief from stay is not granted, Movant respectfully requests the court to order adequate protection

Date: 07/11/2012 _____

                Respectfully submitted,
                Deutsche Bank National Trust Company, as Indenture Trustee
                for American Home Mortgage Investment Trust 2006-3
                _____
                Movant name

                Prober & Raphael, A Law Corporation_____
                Printed name of law firm (if applicable)

                /s/ Jeannette Marsala_____
                Signature of individual Movant or attorney for Movant

                Jeannette R. Marsala, Esquire #253125_____
                Printed name of individual Movant or attorney for Movant

This form is mandatory  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2011                Page 5                F 4001-1.MOTION.RP

**EXHIBIT-E02**          **STAY RELIEF MOTION**          **Page 5 of 51**

## MEMORANDUM OF POINTS AND AUTHORITIES

(This Attachment is the continuation page for Paragraph 6 of the Relief from Stay Motion)

In the event this case is dismissed before Movant's Motion for Relief can be heard, Movant requests that this Court retain jurisdiction to hear the pending motion for relief from the automatic stay as authorized by In re Aheong 276 B.R. 233 (9th Cir.BAP 2002).

As this Court aware, the Ninth Circuit BAP ruled in In re Aheong 276 B.R. 233 (9th Cir.BAP 2002), that the bankruptcy court possessed continuing "arising under" jurisdiction to annul an automatic stay despite the dismissal and even after the closing of the case.

**F 4001-1M.ER**

| In re | (SHORT TITLE) | | CHAPTER: 7 |
|---|---|---|---|
| Jorgina Valivieso | | Debtor(s). | CASE NO.: 8:12-bk-15485-ES |

## *(OPTIONAL)*
## EXTRAORDINARY RELIEF ATTACHMENT
**(MOVANT:**       Deutsche Bank National Trust Company, et al       **)**
*(This Attachment is the continuation page for Paragraph ___3c___ of the Relief From Stay Motion)*

Based upon evidence of efforts by Debtor(s) or others acting in concert with Debtor(s) to delay, hinder or defraud Movant by abusive bankruptcy filings or otherwise, Movant also asks that the Order include the following provisions.

1. ☐ That the Order be binding and effective in any bankruptcy case commenced by or against the above-named Debtor(s) for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

2. ☐ That the Order be binding and effective in any bankruptcy case commenced by or against any successors, transferees, or assignees of the above-named Debtor(s) for a period of 180 days from the hearing of this Motion
   ☐ without further notice.
   ☐ upon recording of a copy of this Order or giving appropriate notice of its entry in compliance with applicable non-bankruptcy law.

3. ☐ That the Order be binding and effective in any bankruptcy case commenced by or against any Debtor(s) who claim(s) any interest in the Property for a period of 180 days from the hearing of this Motion
   ☐ without further notice.
   ☐ upon recording of a copy of this Order or giving appropriate notice of its entry in compliance with applicable non-bankruptcy law.

4. ☐ That the Order be binding and effective in any future bankruptcy case, no matter who the Debtor(s) may be
   ☐ without further notice
   ☐ upon recording of a copy of this Order or giving appropriate notice of its entry in compliance with applicable non-bankruptcy law.

5. ☐ That the Debtor(s) be enjoined from transferring all or any portion of the Property for a period of 180 days from the hearing of this Motion, and any transfer in violation of this Order be deemed void.

6. ☐ That the Sheriff or Marshal may evict the Debtor(s) and any other occupant from the subject Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing of this Motion
   ☐ without further notice.
   ☐ upon recording of a copy of this Order or giving appropriate notice of its entry in compliance with applicable non-bankruptcy law

7. ☒ Other *(specify)*:
   ☒ U.S.C. Sec 362(d)(4): If recorded in compliance with applicable State laws governing notices of interests or other liens in real property, this order shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by this court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State or local governmental unit shall accept any certified copy of an order described in this subsection for indexing and recording.
   ☐ Upon annulment of the automatic stay in the herein captioned bankruptcy, the automatic stay had no force or effect upon the trustee's sale on *. Upon annulment of the automatic stay, the preparation and deliverance of a Trustee Deed Upon Sale by the lender and the foreclosing trustee in favor of Movant, in accordance with applicable California law, is not in violation of the automatic stay.

*December 2011*  **F 4001-1M.ER**
This form is OPTIONAL TO THE JUDGE and may only be used if the judge to whom the case has been
assigned allows such extraordinary relief to be requested by motion. Many judges require the filing
of an adversary proceeding to obtain some or all of these forms of relief.

# REAL PROPERTY DECLARATION

I, (name of Declarant) ____Carolyn J. Moore_____, declare as follows:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (specify):

    ☐  I am the Movant and owner of the Property.

    ☐  I manage the Property as the authorized agent for the Movant.

    ☐  I am employed by Movant as (state title and capacity): _____
    _____

    ☑  Other (specify): I am an Assistant Secretary for Homeward Residential, Inc. as attorney-in-fact for Movant.

2.  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

3.  The Movant is:

    ☐  Original holder of the beneficial interest in the Property. A true and correct copy of a recorded proof of this interest is attached hereto as Exhibit _____ (e.g., deed of trust).

    ☑  Assignee of the original holder of the beneficial interest in the Property. A true and correct copy of recorded proof of this interest is attached hereto as Exhibit 3 ____. (E.g., allonge, assignment, et al.) (*see Page 10A)

    ☐  Servicing or subservicing agent pursuant to a servicing agreement or other documented authorization to act as Movant for the owner of the beneficial interest. Attached hereto as Exhibit _____ is a true and correct copy of the relevant part of the document which reflects authority to act as Movant for the owner of the beneficial interest.

4.  a.  The address of the Property that is the subject of this Motion is:

    Street address: 13307 Providence Place_____
    Unit/suite no.: _____
    City, state, zip code: Bakersfield, CA 93314_____

    b.  The legal description or document recording number (including county of recording) set forth in Movant's deed of trust is attached as Exhibit 1 ____.

    ☐  See attached page.

5.  Type of property (check all applicable boxes):

    a. ☐ Debtor's(s') principal residence         b. ☑ Other single family residence
    c. ☐ Multi-unit residential                    d. ☐ Commercial
    e. ☐ Industrial                                f. ☐ Vacant land
    g. ☐ Other (specify): _____

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2011                    Page 6                    F 4001-1.MOTION.RP

**EXHIBIT-E02**          **STAY RELIEF MOTION**          **Page 8 of 51**

6.  Nature of Debtor's interest in the Property:

   a.  ☐  Sole owner

   b.  ☐  Co-owner(s) (specify):

   c.  ☐  Lien holder (specify):

   d.  ☑  Other (specify): Co-Trustee

   e.  ☑  Debtor  ☐ did  ☐ did not   list the Property in the schedules filed in this case.

   f.  ☑  Debtor acquired the interest in the Property by  ☐ grant deed  ☐ quitclaim deed  ☑ trust deed

      The deed was recorded on. 07/25/2011

7.  Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 510,094.05 |
| b. | Accrued interest: | $ | $ | $ 37,394.11 |
| c. | Late charges | $ | $ | $ 821.58 |
| d. | Costs (attorney's fees, other costs): | $ | $ | $ 3,558.97 |
| e. | Advances (property taxes, insurance): | $ | $ | $ 11,666.27 |
| f. | Less suspense account or partial balance paid: | $[    ] | $[    ] | $[    ] |
| g. | TOTAL CLAIM as of: | $ | $ | $ 563,534.98 |
| h. | ☐ Loan is all due and payable because it matured on (specify date): _____ | | | |

8.  Movant holds a  ☑ deed of trust  ☐ judgment lien  ☑ other (specify) Promissory Note, in due course, which is a negotiable instrument _____ that encumbers the Property.

   a.  A true and correct copy of the document as recorded is attached as Exhibit 1____.

   b.  A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit 2____.

   c.  ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit _____.

9.  Status of Movant's foreclosure actions relating to the Property (fill the date or check the box confirming no such action has occurred):

   a.  Notice of default recorded on the following date: 11/19/2010 _____ or none recorded ☐

   b.  Foreclosure sale originally scheduled for the following date: 3/13/2012 _____ or none scheduled ☐

   c.  Foreclosure sale currently scheduled for the following date: _____ or none scheduled ☑

   d.  Foreclosure sale already held on the following date: _____ or none held ☑

   e.  Trustee's deed on sale already recorded on the following date: _____ or none recorded ☑

10.  Attached (optional) hereto as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the petition date.

11.  ☑ (chapter 7 and 11 cases only):

Status of Movant's loan:

   a.  Amount of current monthly payment: $ 2,579.46 _____ for the month of July 1 _____ 20 12 .

   b.  Number of payments that have come due and were not made: 27 _____. Total amount: $ 67,636.32 _____

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2011           Page 7           F 4001-1.MOTION.RP

**EXHIBIT-E02**       **STAY RELIEF MOTION**       **Page 9 of 51**

c.  Future payments due by time of anticipated hearing date (*if applicable*):

An additional payment of $ 2,579.46_____ will come due on 8/1/2012_____, and on the 1st__ day of each month thereafter. If the payment is not received within 15th_ days of said due date, a late charge of $ 69.04_____ will be charged to the loan.

d.  The fair market value of the entire Property is $_____ , established by:

☐ Appraiser's declaration with appraisal is attached herewith as Exhibit _____.

☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

☐ A true and correct copy of relevant portion(s) of Debtor's schedules is attached as Exhibit _____.

☐ Other (*specify*): _____
_____

e.  **Calculation of equity in Property:**

Based upon ☐ preliminary title report   ☐ Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by <u>Debtor</u> (*if any*) | Amount known to <u>Declarant and Source</u> |
|---|---|---|---|
| 1st deed of trust: | | | |
| 2nd deed of trust: | | | |
| 3rd deed of trust: | | | |
| Judgment liens: | | | |
| Taxes: | | | |
| Other: | | | |

**TOTAL DEBT: $** _____

f.  Evidence establishing the existence of the above deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

☐ Preliminary title report

☐ Relevant portions of Debtor's schedules as filed in this case

☐ Other (*specify*): _____

g.  Subtracting the deed(s) of trust and other lien(s) set forth above from the value of the Property as set forth in Paragraph 10 above, the Debtor's equity in the Property is $_____ (§ 362(d)(2)(A)).

h.  The value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant is $_____ (§ 362(d)(1)).

i.  Estimated costs of sale: $_____ (estimate based upon _____% of estimated gross sales price)

j.  The fair market value of the Property is declining based on or due to:
_____
_____

12. ☐ (Chapter 12 and 13 cases only)

Chapter 12 or 13 case status information:

a.  A 341(a) meeting is currently scheduled for (*or concluded on*) the following date:
Confirmation hearing currently scheduled for (or concluded on) the following date:
Plan was confirmed on the following date (*if applicable*):

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2011                    Page 8                    F 4001-1.MOTION.RP

**EXHIBIT-E02**          **STAY RELIEF MOTION**          **Page 10 of 51**

Postpetition payments due BUT REMAINING UNPAID since the filing of the case:

| | | | |
|---|---|---|---|
| (Number of) | payment(s) due at | $ | Each = $ |
| (Number of) | payment(s) due at | $ | Each = $ |
| (Number of) | payment(s) due at | $ | Each = $ |
| (Number of) | payment(s) due at | $ | Each = $ |
| (Number of) | late charges at | $ | Each = $ |
| (Number of) | late charges at | $ | Each = $ |
| (Number of) | late charges at | $ | Each = $ |
| (Number of) | late charges at | $ | Each = $ |

(See attachment for additional breakdown or information attached as Exhibit _____.)

b.  Postpetition advances or other charges due but unpaid:                          $
    (See attachment for details of type and amount attached as Exhibit _____.)

c.  Attorneys' fees and costs                                                        $
    (See attachment for details of type and amount attached as Exhibit _____.)

d.  Less suspense account or partial paid balance                    $[                          ]

                  TOTAL POSTPETITION DELINQUENCY:                    $

e.  Future payments due by time of anticipated hearing date (if applicable):
    An additional payment of $_____ will come due on _____, and on
    the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late
    charge of $_____ will be charged to the loan.

f.  Amount and date of the last 3 postpetition payments received in good funds, regardless of how applied, from the
    Debtor, if applicable:

    $ _____ received on _____
    $ _____ received on _____
    $ _____ received on _____

g.  ☐  The claim is provided for in the chapter 12 or 13 Plan. Plan payment history is attached as Exhibit _____.

h.  ☐  See attached declaration(s) of chapter 12 or 13 Trustee regarding receipt of payments under the plan (attach
        LBR Form F 4001-1M.13).

13. ☐  Movant has not been provided with evidence that the Property is currently insured, as required under the terms of
       the loan.

14. ☐  The court determined on _____ that the Property qualifies as "single asset real estate" as defined in
       11 U.S.C. § 101(51B).  More than 90 days have passed since the filing of the petition, more than 30 days have
       passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed
       a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the
       Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐  See attached continuation page for facts establishing that the bankruptcy case was filed in bad faith to delay,
       hinder, and or defraud Movant.

16. ☑  The filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved:

    a.  ☑  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or
            court approval. See attached continuation page for facts establishing the scheme.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2011                                  Page 9                                  F 4001-1.MOTION.RP

b. ☑ Multiple bankruptcy filings affecting the Property. The multiple bankruptcy filings include the following cases:

1. Case name:                                     Chapter:
   Case number:                                   Date dismissed:                    Date discharged:
   Date filed:
   Relief from stay re this Property ☐ was  ☐ was not granted.

2. Case name:                                     Chapter:
   Case number:                                   Date dismissed:                    Date discharged:
   Date filed:
   Relief from stay re this Property ☐ was  ☐ was not granted.

3. Case name:                                     Chapter:
   Case number:                                   Date dismissed:                    Date discharged:
   Date filed:
   Relief from stay re this Property ☐ was  ☐ was not granted.

☑ See attached continuation page for more information about other bankruptcy cases affecting the Property.

☑ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

17. ☐ Movant seeks annulment of the automatic stay so that the filing of the bankruptcy petition does not affect any and all of the enforcement actions set forth in paragraph 8 above that were taken after the filing of the bankruptcy petition in this case.

a. ☐ These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Although Movant knew about the bankruptcy filing, Movant had previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting this Property as set forth in Exhibit _____ attached hereto.

c. ☐ For other facts justifying annulment, see attached continuation page.

**I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.**

Date: 8/ /12        Carolyn J. Moore                    _Carolyn J. Moore_
                    _____            _____
                    Printed Declarant's name            Signature of Declarant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2011                          Page 10                          F 4001-1.MOTION.RP

EXHIBIT-E02            STAY RELIEF MOTION            Page 12 of 51

(*OPTIONAL*)
## CONTINUATION PAGE 10A
### OTHER EVIDENCE

John R. Gschwend & Salina E. Gschwend are the initial borrowers on the subject loan.

On July 25, 2011, John R. Gschwend & Salina E. Gschwend transferred interest in the Subject Property to John R. Gschwend, Salina E. Gschwend as Co-Trustees of the John R. & Salina E. Gschwend Revocable Trust, Jorgina Valdivieso & Adam Michel as Co-Trustees of the John R. & Salina E. Gschwend Revocable Trust through a Trust Transfer Deed recorded on July 25, 2011. (A copy of the Grant Deed is attached hereto as Exhibit "4" and made a part hereof)  Said Grant Deed recites on its face that no consideration was given by the transferees.

On July 19, 2011, Adam Michel filed a Chapter 13 case, Case No. 1:11-bk-18644-VK.  This case was dismissed on September 9, 2011 for failure to make plan payments.

On July 25, 2011, Debtor filed a Chapter 13 case, Case No. 6:11-bk-32872-WJ.  This Chapter 13 case was converted to Chapter 7 on July 9, 2011 and dismissed on October 3, 2011 for failure to appear at the 341(a) meeting of creditors.

On or about October 3, 2011, John R. Gschwend & Salina E. Gschwend transferred interest in the subject Property to John R. Gschwend, Salina E. Gschwend, Gustavo G. Cruz and Jelson B. Labador, Co-Trustees of the John R. & Salina E. Gschwend Revocable Trust through a Grant Deed recorded on October 4, 2011. (A copy of the Grant Deed is attached hereto as Exhibit "5" and made a part hereof)   Said Grant Deed recites on its face that no consideration was given by the transferees.

On September 20, 2011, Gustavo G. Cruz filed a Chapter 13 case, Case No. 1:11-bk-21573-VK.  This case was dismissed on October 24, 2011 for failure to file schedules.

On September 30, 2011, Jelson B. Labador filed a Chapter 13 case, Case No. 6:11-bk-40755-WJ.  This case was dismissed on October 12, 2011 due to Debtor's failure to appear at an initial status conference.

On November 3, 2011, John R. Gschwend & Salina E. Gschwend transferred interest in the subject Property to John R. Gschwend, Salina E. Gschwend, Solita Kalaw and Snueel B. Ralangi, Co-Trustees of the John R. & Salina E. Gschwend Revocable Trust through a Trust Transfer Grant Deed recorded on November 4, 2011. (A copy of the Grant Deed is attached hereto as Exhibit "6" and made a part hereof)   Said Grant Deed recites on its face that no consideration was given by the transferees.

On November 2, 2011, Solita Kalaw filed a Chapter 13 case, Case No. 2:11-bk-55634-TD.  This case was dismissed on December 14, 2011 for failure to attend the 341(a) meeting of creditors.

On November 2, 2011, Snueel B. Ralangi filed a Chapter 13 case, Case No. 2:11-bk-55637-NB.  This case was dismissed on December 14, 2011 for failure to attend the 341(a) meeting of creditors.

On December 22, 2011, Snueel B. Ralangi filed a second Chapter 13 case, Case No. 2:11-bk-61852-NB.  This case was Dismissed on January 26, 2012 for failure to file schedules.

On February 6, 2012, John R. Gschwend & Salina E. Gschwend transferred interest in the subject Property to John R. Gschwend, Salina E. Gschwend, Jose Guzman and Jose Esquivel Larios, Co-Trustees of the John R. & Salina E. Gschwend Revocable Trust through a Grant Deed recorded on February 9, 2012. (A copy of the Grant/Quitclaim Deed is attached hereto as Exhibit "7" and made a part hereof)   Said Grant Deed recites on its face that no consideration was given by the transferees.

On February 3, 2012, Jose Esquivel Larios filed a Chapter 13 case, Case No. 8:12-bk-11414-RK.  This case was dismissed on February 22, 2012 for failure to file schedules.

On February 3, 2012, Jose Guzman filed a Chapter 13 case, Case No. 2:12-bk-14006-NB.  This case was dismissed on February 28, 2012 for failure to file schedules.

On March 6, 2012, John R. Gschwend & Salina E. Gschwend transferred interest in the subject Property to John R. Gschwend, Salina E. Gschwend, Faud Iessa Reyyan and Elvia Huizar Beltran as Co-Trustees of the John R. & Salina E. Gschwend Revocable Trust  through a Grant Deed recorded on March 8, 2012. (A copy of the Grant/Quitclaim Deed is attached hereto as Exhibit "8" and made a part hereof)   Said Grant Deed recites on its face that no consideration was given by the transferees.

On March 5, 2012, Elvia Huizar Beltran filed a Chapter 13 case, Case No. 2:12-bk-17795-WB.  This case was dismissed on March 26, 2012 for failure to file schedules.

On March 5, 2012, Faud Iessa Reyyan filed a Chapter 13 case, Case No. 2:12-bk-17797-WB.  This case was dismissed on March 26, 2012 for failure to file schedules.

Debtor filed a second Chapter 13 Bankruptcy petition on May 11, 2012 as Case No. 8:12-bk-15485-ES.  This Chapter 13 proceeding was subsequently converted to a Chapter 7 proceeding on June 11, 2012.

The debtor has no contractual obligation nor any debt to reorganize with Movant.  The debtor has no privity of contract with Movant.

Based upon the foregoing, Movant seeks relief from the Automatic Stay pursuant to 11 U.S.C. §362(d)(1) for "cause", as well as 11 U.S.C. §362(d)(4)(A) and (B)

In addition to the relief set forth above, Movant requests the Order is binding in any prior, current, or subsequent bankruptcy filings by any person or entity, prior to or after the entry of the Order, such that any such bankruptcy filing(s) will not create an automatic stay as to Movant, its assignees and/or successors in interest, with respect to the subject property upon recording of a copy of the Order or giving appropriate notice of its entry in compliance with applicable non-bankruptcy law.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Prober & Raphael, A Law Corporation, P.O. Box 570951, Woodland Hills, California 91364

A true and correct copy of the foregoing document entitled (*specify*): NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (WITH SUPPORTING DECLARATIONS) REGARDING REAL PROPERTY

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 07/10/2012_____. I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Richard A Marshack (TR)    pkraus@marshackhays.com, rmarshack@ecf.epiqsystems.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
Carol G Unruh    cgunruh@sbcglobal.net
Kristin A Zilberstein    bknotice@mccarthyholthus.com, kzilberstein@mccarthyholthus.com

☐ Service information continued on attached page

Lee S. Raphael cmartin@pralc.com

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) __08/21/2012_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 08/21/2012 | Stephanie Arevalo | /s/Stephanie Arevalo |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

II.     SERVED BY U.S. MAIL

Hon. Erithe A. Smith
U.S. Bankruptcy Court
411 W. Fourth Street, Suite 5A
Santa Ana, CA 92701-4595
Judge's Copy

Jorgina Valdivieso
1008 Bristol Street
Santa Ana, CA 92703
Debtor in Pro Se

Richard A. Marshack
Marshack Hays LLP
870 Roosevelt
Irvine, CA 92620
Chapter 7 Trustee

John R. Gschwend
Salina E. Gschwend
13307 Providence Place
Bakersfield, CA 93314
Original Borrower

Adam Michel
13307 Providence Place
Bakersfield, CA 93314
Co-Trustee of the John R. & Salina E. Gschwend Revocable Trust

Occupant(s)
13307 Providence Place
Bakersfield, CA 93314

Recording Requested by
CHICAGO TITLE INSURANCE
Order No. 5500 2684 MR

James W. Fitch, Assessor– Recorder
Kern County Official Records
Recorded at the request of
Chicago Title

JASON
8/30/2006
12:07 PM

DOC#:  0206160334

| Stat Types: 1 | Pages:  23 |
|---|---|
| Fees | 142.00 |
| Taxes | 0.00 |
| Others | 0.00 |
| PAID | $142.00 |

Recording Requested By:

Return To:
American Brokers Conduit
520 Broadhollow Road
Melville, NY 11747

Prepared By:
Mike Amodei
1500 W. Shaw Ave
Suite 403
Fresno, CA
93711 ———————————— [Space Above This Line For Recording Data] ——————————————

# DEED OF TRUST

MIN REDACTED

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated June 15, 2006
together with all Riders to this document.
(B) "Borrower" is John R. Gschwend and Salina E. Gschwend, Husband and Wife

Borrower is the trustor under this Security Instrument.
(C) "Lender" is American Brokers Conduit

Lender is a Corporation
organized and existing under the laws of State of New York

DOC #:324541                    APPL #:0001329149
CALIFORNIA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3005 1/01

-6A(CA) (0005).01       UM31 #976.01   Initials: _____
Page 1 of 15

VMP MORTGAGE FORMS - (800)521-7291

LEGAL / SECURITY INSTRUMENT

Lender's address is  538 Broadhollow Road, Melville  NY  11747

(D) "Trustee" is Chicago Title Company

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated  June 15, 2006
The Note states that Borrower owes Lender Four Hundred Sixty Three Thousand Nine
Hundred Sixty and No/100                                                                    Dollars
(U.S. $463,960.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    July 1, 2046

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

PREPAYMENT RIDER

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

DOC  REDACT
     ED
(MERS) 6A(CA) (0005).01            APPL  REDACTED

                                   Page 2 of 15        Initials  _____    Form 3005  1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                                                     of Kern

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

Legal description attached hereto and made a part hereof.

Parcel ID Number: 495-360-12                      which currently has the address of
13307 Providence Place                                                              [Street]
Bakersfield                                      [City] , California 93314        [Zip Code]
("Property Address"):

  TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

  BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

DOC #: REDACT                    APPL #: REDACTE
-EA(CA) (0005)01                       D Page 3 of 15              Initials: JLG
                                                                  A U H.          Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

DOC #REDACTED    APPL #REDACTED

-6A(CA) (0005).01    Page 4 of 15    Initials _____    Form 3005  1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

ooc REDACTED          appl REDACTED

⊛ -6A(CA) (0X08:01)          Page 5 of 15          Initials: _____          Form 3005  1/01

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

DOC REDACTED          APPL REDACTED

-6A(CA) (0005).01          Page 6 of 15          Initials JLG          Form 3005  1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



DOC ·REDACTED          APPL REDACTED

(RSS) 6A(CA) (0005).01          Page 7 of 15          Initials: 026          Form 3005  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage

DOC: REDACTE              APPL: REDACTED

D

(Logo) -6A(CA) (0005.01)              Page 8 of 15              Initials: _JVJ._              Form 3005  1/01

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the REDACT ' by this Security Instrument REDACTE 'ny demand made by the original Borrower or

DOC             APPL

ED              D

@@ -6A(CA) (0005) 01                          Page 9 of 15                    Initials _____              Form 3005  1/01

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

DOC REDACT    APPL •REDACTED
ED

-6A(CA) (0005) 01       Page 10 of 15       Initials: [signature]       Form 3005  1/01

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

DOC: REDACTED    APPL: REDACTED

-6A(CA) (0005).01    Page 11 of 15    INITIALS: _____    Form 3005 1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DOC: REDACTED

APPL #REDACTED

-6A(CA) (0005)01

Page 12 of 15

Initials

Form 3005  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC REDACTED

APPL # REDACTE
D Page 13 of 15

Initials

Form 3005   1/01

-6A(CA) (2005) 01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                           John R. Gschwend          -Borrower

_____          _____ (Seal)
                                           Salina E. Gschwend        -Borrower

_____ (Seal)        _____ (Seal)
                  -Borrower                                          -Borrower

_____ (Seal)        _____ (Seal)
                  -Borrower                                          -Borrower

_____ (Seal)        _____ (Seal)
                  -Borrower                                          -Borrower

REDACTED                  APPL #: REDACTE              Form 3005  1/01
                                   Page 14 of 15

State of California
County of Kern

On June 16th, 2006 before me, Mary Belve Dunham, Notary Public personally appeared

John R. Gschwend and Salina E. Gschwend

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in he/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

Mary Jolene Dunham (Seal)

MARY JOLENE DUNHAM
Commission # 1566413
Notary Public - California
Kern County
My Comm. Expires Apr 2, 2009

DOC REDACTED          APPL REDACTED

-6A(CA) (0005) 01          Page 15 of 15          Initials          Form 3005  1/01

Escrow No.: REDACTED
Locate No.: REDACTED
Title No.: 06

LEGAL DESCRIPTION

## EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF BAKERSFIELD, COUNTY OF KERN, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Lot 34 of Tract No. 6007, Unit Three, in the City of Bakersfield, County of Kern, State of California, as per Map recorded November 25, 2003 in Book 50, Page 132 of Maps, in the Office of the County Recorder of said County.

EXCEPT from a portion of said land 1/2 of all oil, gas, petroleum or other hydrocarbon substances within or underlying said land or that may be produced and saved therefrom, together with the right to prospect for, mine and remove the same, as reserved by J. Glenn Marks and Margaret M. Marks, his wife, as to an undivided 5/6ths interest; Mable M. Marks and Ulela V. Enns, as to an undivided 1/6th interest, in Deed recorded March 13, 1946 in Book 1279, Page 332 of Official Records.

By "Quitclaim Deed" recorded October 4, 2000 as Document No. 0200124359 of Official Records, an undivided 5/6ths interest of all rights to the surface and the subsurface thereof to a depth of 500 feet below the surface were quitclaimed.

ALSO EXCEPTING from a portion of said land all remaining oil, gas and other minerals within or underlying said land, or that may be produced and saved therefrom provided that the Grantor, his successors and assigns shall not conduct drilling or other operations upon the surface of said land, but nothing herein contained shall be deemed to prevent the Grantor, his successors and assigns from extracting or capturing said minerals by drilling on adjacent or neighboring lands and/or from conducting subsurface drilling operations under said lands at a depth of 500 feet below the surface of said land, so as not to disturb the surface thereof or any improvements thereon, as reserved by Richard J. Froehlich, Trustee, Froehlich Living Trust dated August 5, 1991, recorded October 26, 2000 as Document No. 0200136652 of Official Records.

Exhibit Page - Legal(exhibit)(8-02)

Loan #: REDACTED

## PREPAYMENT RIDER TO SECURITY INSTRUMENT

THIS PREPAYMENT RIDER is made this _15th_ of _June, 2006_____, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to _American Brokers Conduit_ _____ _____ (the "Lender")

of the same date and covering the Property described in the Security Instrument and located at:

_13307 Providence Place, Bakersfield, CA 93314_____ _____
[Property Address]

PREPAYMENT COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows.

I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any penalty. If within the first _two_____ ( _2_____ ) year(s) after the execution of the Note, I make a Full Prepayment or Partial Prepayment(s) of more than twenty percent (20%) of the original principal amount in a twelve month period immediately preceding the date of prepayment, I will pay a prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid which is in excess of twenty percent (20%) of the original principal amount of the Note in that twelve month period. Interest will be calculated using the rate in effect at the time of prepayment.

If I make a partial prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month. If I make a partial prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

NOTICE TO THE BORROWER
Do not sign this Prepayment Rider before you read it. This Prepayment Rider provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the Note.

Multi-State Prepayment Rider
(2-ord-06)
REDACTED                          page 1 of 2                    AHM-2034S(MULTI)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions
contained in this Prepayment Rider

_____  _____
John R. Gachwend      Salina E. Gachwend

Multi-State Prepayment Rider       AHM-2034S(MULTI)
REDACTED

ADJUSTABLE RATE RIDER

FIRST FIVE YEAR FIXED PAYMENT - 12MTA

THIS ADJUSTABLE RATE RIDER is made this __15th__ day of __June, 2006__ ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to_____
__American Brokers Conduit__
(the "Lender") of the same date and covering the property described in the Security Instrument and
located at:
__13307 Providence Place, Bakersfield, CA  93314__

(Property Address)

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
INTEREST RATE AND MY MONTHLY PAYMENT BECAUSE MY
INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY
MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY
MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY
PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A
RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER
THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN
___110.000%___ OF THE ORIGINAL AMOUNT (OR $___510,356.00___).
MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE
NOTE AND RIDER.  A BALLOON PAYMENT MAY BE DUE AT
MATURITY.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

Interest will be charged on unpaid Principal until the full amount has been paid.  I will pay
interest at a yearly rate of __1.900__% until __June 30, 2006__, and the initial monthly payment
provided for in the Note will be based on this rate.  Commencing __July 1, 2006__, I will pay
interest at a yearly rate of __7.232__%.  Thereafter, the interest rate I will pay may change in
accordance with Section 4 of the Note.

Section 4 of the Note provides for changes in the interest rate and monthly payment as follows:

AHM-2032R(Mult) (01/06)

Document # REDACTED

4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may further change on the _____1st_____ day of August · 2006 _____, and on that day every month thereafter. Each such date on which my interest rate could change is called a "Change Date".

(B) The Index

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Interest Rate Change

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and 950 Thousandths _____ percentage points 2.950 _____ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

(D) Interest Rate Limit

My interest rate will never be greater than ____9.950____ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

(E) Payment Change Dates

Page 2 of 5                           AHM-2032R(MultI) (01/06)

Document REDACTED

Effective commencing ___August 1st, 2011_____, (the "First Payment Change Date") and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date. My Payments can change at any time, before or after the First Payment Change Date or any Payment Change Dates under Section 4(H) of the Note

### (F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date following the First Payment Change Date under Section 4(E), will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the Principal Payment and does not apply to any escrow payments Lender may require under the Security Instrument.

### (G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated

#### Amortization

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the Maturity Date in substantially equal payments. Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion. For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note

### (H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to ___110.000%__ of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that ___110.000%__ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid principal in full on the Maturity Date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

### (I) Required Full Monthly Payment

On the ___Five___ anniversary of the due date of the first monthly payment, and on that same day every ___Five___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F)

### (J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my

Page 3 of 5                    AHM-2032R(Multi) (01/06)

REDACTED

Document

monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid "Principal."

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (c) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this

Document REDACTED

Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider. Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

_____ (Seal)          _____ (Seal)
John R. Gschwend            -Borrower    Salina E. Gschwend         -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                               -Borrower

Page 5 of 5                    AHM-2032R(Mult) (01/06)

Document REDACTED



RECORDING REQUESTED BY
Recording Requested By
ServiceLink
AND WHEN RECORDED MAIL TO

AMERICAN HOME MORTGAGE
SERVICING,INC.
4875 Belfort Road, Suite 130
Jacksonville, FL 32256

**James W. Fitch, Assessor – Recorder**    TELFORDT
Kern County Official Records                2/22/2011
                                            8:00 AM
Recorded at the request of
Public

DOC#:    0211023058            Stat Types: 1    Pages:    1

                               Fees            12.00
                               Taxes            0.00
                               Others           0.00
                               PAID           $12.00

Trustee Sale No.1 REDACTED    Loan No. REDACTED    Title Order No REDACTED
                                                    Space above this line for recorder's use only
### ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2006-3 all beneficial interest under that certain Deed of Trust dated as of June 15, 2006 executed by JOHN R. GSCHWEND AND SALINA E. GSCHWEND, HUSBAND AND WIFE , as Trustor; to CHICAGO TITLE COMPANY, as Trustee; and Recorded on June 30, 2006 with recorder's reference  0206160334 of official records in the Office of the Recorder of Kern County, California.

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust including the right to have reconveyed, in whole or in part, the real property described therein.

DATE: DEC 2 8 2010

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

Elizabeth Boulton

By: Vice President

**Florida**
STATE OF:

**Duval**
COUNTY OF:

On DEC 2 8 2010    before me, **Rosemarie Boren**                    , Notary Public, personally appeared ____Elizabeth Boulton____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of **Florida** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Signature  Rosemarie Boren

ROSEMARIE BOREN
MY COMMISSION # DD89003
EXPIRES: May 14, 2013
FL Notary Discount Assoc. Co



ADJUSTABLE RATE NOTE

FIRST FIVE YEAR FIXED PAYMENT – 12MTA

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT  BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES.  AS A RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN __110.000%__ OF THE ORIGINAL AMOUNT (OR $ __510,356.00__ ).  MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

| June 15, 2006 | Bakersfield | California |
|---|---|---|
| | (City) | (State) |

13307 Providence Place, Bakersfield, CA  93314
_____
(Property Address)

1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ __463,960.00__ plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is __American Brokers Conduit__ . I will make all payments under this Note in form of cash, check or money order.  I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

2.  INTEREST

Interest will be charged on unpaid Principal until the full amount has been paid.  I will pay interest at a yearly rate of __1.900%__ until __June 30, 2006__, and the initial monthly payment provided for in Section 3(B) of this Note will be based on this rate (the "Initial Rate").  Commencing __July 1, 2006__, I will pay interest at a yearly rate of __7.232%__ (the "Subsequent Rate").  Thereafter, the interest rate I will pay may change in accordance with Section 4 of this Note.  The interest rate required by this Section 2 and Section 4 of this Note is the interest rate I will pay both before and after any default described in Section 7(B) of this Note.

3.  PAYMENTS

(A) Time and Place of Payments

I will pay Principal and interest by making payments every month.  In this Note, unless otherwise specified "payment" refers to the Principal and interest payment only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

I will make my monthly payments on __1st__ day of each month beginning on __August, 2006__.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied to interest before Principal.  If, on __July 1, 2046__, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at PO Box 660029, Dallas, TX  75266-0029 _____, or at a different place if required by the Note Holder.

DOC REDACTED          APPL #REDACTED          Rev. 1/27/06

Page 1 of 6          AHM-2032N(MULT) (0106)

**(B) Amount of My Initial Monthly Payments**

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $ __1,380.70_____, unless adjusted at an earlier time under Section 4(H) of this Note.

**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may further change on the __1st_____ day of __August___,_____, __2006_____, and on that day every month thereafter. Each such date on which my interest rate could change is called a "Change Date."

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as the 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding _____ Two and 950 Thousandths_____ percentage points __2.950_____ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than __Nine and 950 Thousandths_____ _____ percentage points __9.950_____ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective commencing _____August 1, 2011_____, (the "First Payment Change Date") and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date. My payments can change at any time, before or after the First Payment Change Date or any Payment Change Dates under Section 4(H) of this Note.

DOC REDACTED                        APPL REDACTED                    Rev 1/27/06
                                    Page 2 of 6                      AHM-2032N(MULT)(0106)

### (F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amounts of my new monthly payment, beginning with a Payment Change Date following the First Payment Change Date under Section 4(E), will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.

### (G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the Maturity Date in substantially equal payments. Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion. For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

### (H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to _____ 110,000% of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that 110,000% limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the Maturity Date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

### (I) Required Full Monthly Payment

On the __Five__ anniversary of the due date of the first monthly payment, and on that same day every __Five__ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

### (J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

DOC REDACTED                                        APPL REDACTED                                 Rev 1/27/06

My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**Miscellaneous Fees:** I understand that the Note Holder will also charge a return item charge in an amount permitted and otherwise in accordance with Applicable Law in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. Lender reserves the right to change the fee from time to time without notice except as may be required by law.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of _____15_____ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__ % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once for each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given to Borrower).

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

DOC  REDACTED                    APPL  #REDACTED                    Rev 1/27/06

Page 4 of 6                                                         AHM-2032N(MULT) (0106)

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

### Transfer of the Property or a Beneficial Interest in Borrower.

If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay

DOC REDACTED     APPL REDACTED     Rev 1/27/06

Page 5 of 6     AHM-2032N(MULT) (0106)

these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
John R. Gschwend          -Borrower          Salina E. Gschwend          -Borrower

_____ (Seal)          _____ (Seal)
-Borrower          -Borrower

_____ (Seal)          _____ (Seal)
-Borrower          -Borrower

_____ (Seal)          _____ (Seal)
-Borrower          -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
BY AMERICAN BROKERS CONDUIT

APP: REDACTED

CESAR COBOS
ASST. SECRETARY

DOC: REDACTED

Page 6 of 6          AHM-2032N(MULT)(0106)

Loan #: REDACTED

### ADDENDUM TO NOTE
### (Prepayment)

THIS ADDENDUM is made this ___15th___ day of June, 2006_____, and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1.  The Section in the Note entitled "Borrower's Right to Prepay" is modified to provide that I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any penalty. If within the first _two_ ( 2 ) year(s) after the execution of the Note, I make a Full Prepayment or Partial Prepayment(s) of more than twenty percent (20%) of the original principal amount in a twelve month period immediately preceding the date of prepayment, I will pay a prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid which is in excess of twenty percent (20%) of the original principal amount of the Note in that twelve month period. Interest will be calculated using the rate in effect at the time of prepayment.

If I make a partial prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month. If I make a partial prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

2.  All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

### NOTICE TO THE BORROWER
Do not sign this Note Addendum before you read it. This Note Addendum provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the Note.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Note Addendum.

_____        _____
John R. Gschwend                        Salina E. Gschwend

Multi-State Prepayment Rider                     AHM-2034P(MULTI)
(Rev4-06)
REDACTED

James W. Fitch, Assessor – Recorder  SOFIR
Kern County Official Records  7/25/2011
Recorded at the request of  9:51 AM
Public

RECORDING REQUESTED BY:
JOHN R. GSCHWEND AS CO-TRUSTEE

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO:

JOHN R. GSCHWEND
13307 Providence Pl
Bakersfield, CA 93314

DOC#: 0211093544    Stat Types: 1   Pages: 1

| | |
|---|---|
| Fees | 15.00 |
| Taxes | 0.00 |
| Others | 3.50 |
| PAID | $18.50 |

APN#: 495-36 0-12    Space Above This Line For Recorder's Use

# TRUST TRANSFER GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s):
DOCUMENTARY TRANSFER TAX is $ NONE.  CITY TAX $ NONE.
☒ "This conveyance transfers an interest into or out of a living trust, R & T 11930"
☒ Excluded from Reappraisal Under Proposition 13, California Constitution Article 13A § 1, et seq.

JOHN R. GSCHWEND, SALINA E. GSCHWEND AS CO-TRUSTEES OF THE JOHN R. & SALINA
E. GSCHWEND REVOCABLE TRUST HEREBY GRANT(S) TO JOHN R. GSCHWEND, SALINA E.
GSCHWEND, JORGINA VALDIVIESO AND ADAM MICHEL AS CO-TRUSTEES OF THE JOHN
R. & SALINA E. GSCHWEND REVOCABLE TRUST,

the following described real property in the City of Bakersfield, County of Kern,
State of California:

Lot 34 of Tract 6007, Phase 3, in the City of Bakersfield, County of Kern, State of California, as per Map filed November 25,
2003 in Book 50, Page 132 of Maps, in the office of the County Recorder of said county.

Commonly known as: 13307 Providence Pl., Bakersfield, CA 93314

Dated: 7-25-11

Dated: 7-25-11



JOHN R. GSCHWEND as Co-trustee

SALINA E. GSCHWEND as Co-trustee

STATE OF CALIFORNIA        }
COUNTY OF __Kern__        } S.S.

On __July 25, 2011__ before me, __G. Agcaoili__, a notary public in
and for said state, personally appeared __John R. Gschwend + Salina E Gschwend__ who proved to me
on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)



G. AGCAOILI
Commission # 1871263
Notary Public - California
Kern County
My Comm. Expires Dec 12, 2013

Trust Transfer Grant Deed 1 of 1

RECORDING REQUESTED BY:
JOHN R. GSCHWEND AS CO-TRUSTEE

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO:

JOHN R. GSCHWEND
13307 Providence Pl.
Bakersfield, CA 93314

James W. Fitch, Assessor — Recorder
Kern County Official Records
Recorded at the request of
Public

DOC#: 0211120230

Stat Types: 1    Pages: 2

| | |
|---|---|
| Fees | 16.00 |
| Taxes | 0.00 |
| Others | 4.00 |
| PAID | $22.00 |

SDFJR
10/04/2011
12:00 PM

APN#: 495-360-12

Space Above This Line For Recorder's Use

# TRUST TRANSFER GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s):
DOCUMENTARY TRANSFER TAX is $ NONE.  CITY TAX $ NONE,
☒ "This conveyance transfers an interest into or out of a living trust, R & T 11930"
☒ Excluded from Reappraisal Under Proposition 13, California Constitution Article 13A § 1, et seq.

JOHN R. GSCHWEND AS CO-TRUSTEE OF THE JOHN R. & SALINA E. GSCHWEND
REVOCABLE TRUST, HEREBY GRANT(S) TO JOHN R. GSCHWEND, SALINA E. GSCHWEND,
GUSTAVO G CRUZ AND JELSON B LABADOR CO-TRUSTEES OF THE JOHN R. & SALINA E.
GSCHWEND REVOCABLE TRUST,

the following described real property in the City of Bakersfield, County of Kern,
State of California:

Lot 34 of Tract 6007, Phase 3, in the City of Bakersfield, County of Kern, State of California, as per Map filed November 25,
2003 in Book 50, Page ___ of Maps, in the office of the County Recorder of said county.

Commonly known as: 13307 Providence Pl., Bakersfield, CA 93314

Dated: 10-3-11

JOHN R. GSCHWEND as Co-trustee

STATE OF CALIFORNIA }
COUNTY OF _____ } S.S.

On October 03, 11 before me, FLORENCIA ASUNCION, a notary public in
and for said state, personally appeared John Richard Gschwend, who proved to me
on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.
Signature _____ FLORENCIA ASUNCION
My commission expires: 01-15-2014

FLORENCIA ASUNCION
NOTARY PUBLIC
No. 09-26
STATE OF HAWAII

Trust Transfer Grant Deed 1 of 1

Kern County Official Records
Recorded at the request of
Public

11/04/2011
12:22 PM

RECORDING REQUESTED BY:
JOHN R. GSCHWEND AS CO-TRUSTEE

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO:

JOHN R. GSCHWEND
13307 Providence Pl
Bakersfield, CA 93314

DOC#:  0211146450

| Stat Types: 1 | Pages: 2 |
|---|---|
| Fees | 18.00 |
| Taxes | 0.20 |
| Others | 4.00 |
| PAID | $22.00 |

APN#: 495-36 0-12                    Space Above This Line For Recorder's Use

# TRUST TRANSFER GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s):
DOCUMENTARY TRANSFER TAX is $ NONE.  CITY TAX $ NONE.
☒ "This conveyance transfers an interest into or out of a living trust, R & T 11930"
☒ Excluded from Reappraisal Under Proposition 13, California Constitution Article 13A § 1, et seq.

JOHN R. GSCHWEND AS CO-TRUSTEE OF THE JOHN R. & SALINA E. GSCHWEND
REVOCABLE TRUST HEREBY GRANT(S) TO JOHN R. GSCHWEND, SALINA E. GSCHWEND,
SOLITA KALAW AND SNUEEL B RALANGI CO-TRUSTEES OF THE JOHN R. & SALINA E.
GSCHWEND REVOCABLE TRUST,

the following described real property in the City of Bakersfield, County of Kern,
State of California:

Lot 34 of Tract 6007, Phase 3, in the City of Bakersfield, County of Kern, State of California, as per Map filed November 25,
2003 in Book 50, Page 132 of Maps, in the office of the County Recorder of said county.

Commonly known as: 13307 Providence Pl ., Bakersfield, CA 93314

Dated: 11-3-11

JOHN R. GSCHWEND as Co-trustee

STATE OF ~~CALIFORNIA~~ Hawaii                    } 
COUNTY OF Honolulu                    } S.S.

JOHN R. & SALINA E. GSCHWEND
REVOCABLE TRUST

On November 03, 2011 before me, FLORENCIA ASUNCION, a notary public in
and for said state, personally appeared John Richard Gschwend, who proved to me
on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ Hawaii that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.
Signature_____ FLORENCIA ASUNCION
My commission expires: 01-15-2014

Notary certification attached   Trust Transfer Grant Deed 1 of 1

NOTARY
PUBLIC
No. 06-26
STATE OF HAWAII

James W. Fitch, Assessor – Recorder  SABRINA
Kern County Official Records            2/09/2012
                                        11:35 AM
Recorded at the request of
Public

**RECORDING REQUESTED BY:**
JOHN R. GSCHWEND AS CO-TRUSTEE

**WHEN RECORDED MAIL TO**
**AND MAIL TAX STATEMENTS TO:**

JOHN R. GSCHWEND
13307 Providence Pl
Bakersfield, CA 93314

| DOC#: | 0212017936 | | Stat Types: 1 | Pages: 1 |
|---|---|---|---|---|
| | | | Fees | 15.00 |
| | | | Taxes | 0.00 |
| | | | Others | 3.50 |
| | | | PAID | $18.50 |

APN#: 495-36 0-12                Space Above This Line For Recorder's Use

## TRUST TRANSFER GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s):
DOCUMENTARY TRANSFER TAX is $ NONE.  CITY TAX $ NONE.
☒ "This conveyance transfers an interest into or out of a living trust, R.& T 11930"
☒ Excluded from Reappraisal Under Proposition 13, California Constitution Article 13A § 1, et seq.

JOHN R. GSCHWEND AS CO-TRUSTEE OF THE JOHN R. & SALINA E. GSCHWEND
REVOCABLE TRUST HEREBY GRANT(S) TO JOHN R. GSCHWEND, SALINA E. GSCHWEND,
Jose Guzman AND Jose Esquivel Larios CO-TRUSTEES OF THE JOHN R. & SALINA E.
GSCHWEND REVOCABLE TRUST,

the following described real property in the City of Bakersfield, County of Kern,
State of California:

Lot 34 of Tract 6007, Phase 3, in the City of Bakersfield, County of Kern, State of California, as per Map filed November 25,
2003 in Book 50, Page 132 of Maps, in the office of the County Recorder of said county.

Commonly known as: 13307 Providence Pl ., Bakersfield, CA 93314

Dated: 2.-6-12                        _____
                                      JOHN R. GSCHWEND as Co-trustee

                HONOLULU
STATE OF CALIFORNIA          }
COUNTY OF ___HONOLULU___     } S.S.

On FEBRUARY 6, 2012 before me, MOLINA C. GOMEZ , a notary public in
and for said state, personally appeared JOHN R. GSCHWEND , who proved to me
on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.
                                          HAWAII
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.
Signature _____

See ATTACHED NOTARY CERTIFICATION

                Trust Transfer Grant Deed 1 of 1

(Notary seal: MOLINA C. GOMEZ NOTARY PUBLIC No. 07-478 STATE OF HAWAII)

03/08/2012    04:55 pm    From:                    To:            415 512 0146 Page: 4

James W. Fitch, Assessor – Recorder
Kern County Official Records

BEARDSLE
3/08/2012
11:40 AM

Recorded at the request of
Public

RECORDING REQUESTED BY:
JOHN R. GSCHWEND AS CO-TRUSTEE

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO:

JOHN R. GSCHWEND
13307 Providence Pl
Bakersfield, CA 93314

DOC #: 0212031647

| Stat Types: 1 | Pages: 2 |
| --- | --- |
| Fees | 18.00 |
| Taxes | 0.00 |
| Others | 4.00 |
| PAID | 322.00 |

APN#: 495-36 0-12                 Space Above This Line For Recorder's Use

# TRUST TRANSFER GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s):
DOCUMENTARY TRANSFER TAX is $ NONE.  CITY TAX $ NONE.
☒ "This conveyance transfers an interest into or out of a living trust, R & T 11930"
☒ Excluded from Reappraisal Under Proposition 13, California Constitution Article 13A § 1, et seq.

JOHN R. GSCHWEND AS CO-TRUSTEE OF THE JOHN R. & SALINA E. GSCHWEND
REVOCABLE TRUST HEREBY GRANT(S) TO JOHN R. GSCHWEND, SALINA E. GSCHWEND,
Fand lessa Reyyan AND Elvia Huizar Beltran CO-TRUSTEES OF THE JOHN R. & SALINA E.
GSCHWEND REVOCABLE TRUST,

the following described real property in the City of Bakersfield, County of Kern,
State of California:

Lot 34 of Tract 6007, Phase 3, in the City of Bakersfield, County of Kern, State of California, as per Map filed November 25,
2003 in Book 50, Page 132 of Maps, in the office of the County Recorder of said county.

Commonly known as: 13307 Providence Pl ., Bakersfield, CA 93314

Dated:  3 - 6 - 12                        _John R. Gschwend_
                                         JOHN R. GSCHWEND as Co-trustee

STATE OF ~~CALIFORNIA~~ HAWAII      } THE JOHN & E SALINA E GSCHWEND
COUNTY OF HONOLULU                  } S.S. REVOCABLE TRUST HEREBY G.

On MARCH 5, 2012 before me, MOLINA C GOMEZ, a notary public in
and for said state, personally appeared JOHN R. GSCHWEND, who proved to me
on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ HAWAII that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.
Signature _Molina C. Gomez_  09 - 16 - 2015
MY COMMISSION EXPIRES 09 - 16 - 2015
SEE ATTACHED NOTARY CERTIFICATION

(Notary Seal: MOLINA C. GOMEZ NOTARY PUBLIC No. 07-478 STATE OF HAWAII)

Trust Transfer Grant Deed 1 of 1

03/08/2012    12:54    6613271286                    SPARTON INC                    PAGE  01/02

Teresa J. Moore
P.O. Box 75217
Honolulu, Hi 96885
818-206-1146

April 10, 2013

Vjay - Customer Service Loan Modification
Ocwen Loan Servicing
via facsimile: 407-381-6911

RE: John Gschwend Lease Agreement

Dear Sirs:

This letter documents my agreement to a house share arrangement with John & Selina Gschwend as a roommate in their home located at : 13307 Providence Place Bakersfield, CA 93314.

My occupancy began on February 1, 2013 after I regained possession of the house from a tenant that had heldover for 5 months without any payments to the Gschwends.

I currently pay $750 / mo and have a 5 year lease as a house share with the Gschwends.

Attached is a copy of my security deposit and first month's payment.

Sincerely,

Teresa J. Moore

**EXHIBIT-E03      SUBSTITUTED LEASE AGREEMENT      Page 1 of 8**



**Wells Fargo Business Online®**

---

## View Check Copy

| | Check Number | Date Posted | Check Amount | Account Number |
|---|---|---|---|---|
| 208 | | 04/08/13 | $1,500.00 | WFB1130-P_Checking XXXXXX1130 |

TERESA MOORE
6TH AND SAN CARLOS BOX S-3234
CARMEL, CA 93921

208
11-4288/1210 4215
2011321130

April 8, 2013 Date

Pay to the Order of _John Gschwend_          $ *1500.00*

_one thousand five hundred dollars_ Dollars

Wells Fargo Bank, N.A.
California
wellsfargo.com

For _April rent Providine_          _Teresa J. Moore_

DD 208

⌂ Equal Housing Lender
© 1995 - 2013 Wells Fargo. All rights reserved.

**Making Home Affordable Program**
Request For Mortgage Assistance (RMA)


MAKING HOME AFFORDABLE.gov

**When you sign and date this form, you will make important certifications, representations and agreements, including certifying that all of the information in this RMA is accurate and truthful.**

## HARDSHIP AFFIDAVIT

### SECTION 1: BORROWER INFORMATION

|  | Borrower | Co-Borrower 1 | Co-Borrower 2 |
|---|---|---|---|
| Name | John Gschwend | Selina Gschwend |  |
| Social Security Number | 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 | 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 |  |
| Date of Birth | 12-25-55 | 1-15-50 |  |
| Home Phone Number with Area Code | 808-282-7282 | 808-282-7282 |  |
| Cell or Work Number with Area Code | 808-282-7282 | 808-282-7282 |  |
| Email ID | eet.john@yahoo.com |  |  |

**Property Address:-** 13307 Providence Pl. Bakersfield CA 93314

| Has any borrower filed for bankruptcy? ☑ Yes ☐ No    9-13-12    12-01817 | Is any borrower a service member? ☐ Yes ☑ No |
|---|---|
| Filing Date(MM/DD/YYYY) 1/39/13  Bankruptcy case number 12-00024 |  |
| Has your bankruptcy been discharged? ☑ Yes ☐ No | Have you recently been deployed away from your principal residence or recently received a permanent change of station order? ☐ Yes ☑ No |

| How many single family properties other than your principal residence do you and/or any co-borrower(s) own individually, jointly, or with others? | none |
|---|---|
| Have you ever received a HAMP modification on a loan where the property was the primary residence of one of the borrowers? | ☐ Yes ☑ No |
| How many permanent HAMP modifications have any borrowers received on properties that were not their primary residence? | none |
| Are you or any co-borrower currently in or being considered for a HAMP trial plan on a property other than your principal residence? | ☐ Yes ☑ No |

### SECTION 2: PROPERTY INFORMATION

| I want to: | ☐ Keep the property | ☑ Sell the Property |
|---|---|---|
| Do you have any condominium or homeowners association (HOA) fees? | ☑ Yes | ☐ No |
| Total Monthly Amount of HOA fees: | $ 65.00 | |
| Who are fees paid to? (Name & Address): | Hampton Association | |
| Are there other mortgage(s) or liens on the property? | ☐ Yes | ☑ No |
| If "Yes", Servicer Name : _____ | Loan ID number: _____ | |

| I consider the property my principal residence | ☑ Yes (Provide a recent utility bill) | ☐ No (Must also complete Section 3) |
|---|---|---|
| Do you currently occupy the property? | ☑ Yes (Skip the remaining questions) | ☐ No (Answer the remaining questions) |

If you do not live in the home currently:

| 1. | What is the total monthly rent or mortgage payment on your current residence? | $ _____ |  |
|---|---|---|---|
| 2. | Do you intend to occupy this residence as your primary home in the next 12 months? | ☐ Yes | ☐ No |
| 3. | Have you been temporarily displaced (military, job transfer, etc)? | ☑ Yes | ☐ No |

If Yes, describe Am now living in Hawaii and California. Had to evict tenants and just got occupancy. Plan to have room mates.

| 4. | Is the property being rented by someone? | ☐ Yes | ☐ No |
|---|---|---|---|
|  | If yes, Lease start date (MM/YY) ____/____ Monthly Rent $ _____.00 | (Provide a copy of the lease) | |

**EXHIBIT-E03    SUBSTITUTED LEASE AGREEMENT    Page 3 of 8**

# FINANCIAL INFORMATION FORM

## SECTION 4: CURRENT EMPLOYMENT INFORMATION

You should only complete selected employer information if you are currently working for them
If you are unemployed, you should indicate that you are currently unemployed, etc.

| | Borrower | Co-Borrower 1 | Co-Borrower 2 |
|---|---|---|---|
| Status of Employment | ☐ Employed ☑ Self Employed ☐ Unemployed | ☐ Employed ☐ Self Employed ☑ Unemployed | ☐ Employed ☐ Self Employed ☐ Unemployed |
| If unemployed, are you currently receiving unemployment benefits or received the benefits in the last 6 months? | ☐ Yes ☐ No | ☐ Yes ☑ No | ☐ Yes ☐ No |
| Hire Date | __/__/____ MM/DD/YYYY | __/__/____ MM/DD/YYYY | __/__/____ MM/DD/YYYY |
| How often are you paid? | ☐ Weekly ☐ Every other week ☐ Monthly ☐ Twice a month | ☐ Weekly ☐ Every other week ☐ Monthly ☐ Twice a month | ☐ Weekly ☐ Every other week ☐ Monthly ☐ Twice a month |

## SECTION 5: INCOME INFORMATION - RECEIVED PER MONTH

All income should be listed that was received on a monthly basis from any employer.

*GROSS Pay* – This is the amount of compensation received by the employee each month before any deductions are made for taxes, health benefits, 401k contributions, etc.

*NET Pay* – This is the amount of compensation received by the employee each month after all deductions are made for taxes, health benefits and contributions, etc. This would be the actual dollar amount on the paycheck or amount deposited into an employee's bank account if direct deposit is used.

*Overtime Pay, Commissions and Bonuses* – This should be listed as a monthly average since these are not received on a monthly basis. For example, if a bonus amount of $1,200 is received on a yearly basis, the amount listed should be $100 ($1,200 divided by 12 months = $100).

*Self Employed Borrowers* – The total amount of income received each month should be tied back to the Profit and Loss Statement to be provided under the Document Checklist. A Profit and Loss Statement is a financial statement that summarizes the revenues, costs and expenses incurred during a specific period of time, usually over a quarter or year.

| | Borrower | Co-Borrower 1 | Co-Borrower 2 |
|---|---|---|---|
| GROSS Pay (Before all tax/ payroll deductions) | $ | $ | $ |
| NET Pay (Take home pay) | $ | $ | $ |
| Overtime Pay (Average per month and not included in above) | $ | $ | $ |
| Commissions (Average per month and not included in above) | $ | $ | $ |
| Bonus (Average per month and not included in above) | $ | $ | $ |
| Tips (Average per month and not included in above) | $ | $ | $ |
| Social Security | $ | $ | $ |
| Disability / Death Benefits | $ | $ | $ |
| Retirement/ Pension | $ | $ | $ |
| Alimony/ Child Support* | $ | $ | $ |
| Public Assistance / Workers' Compensation | $ | $ | $ |
| Food Stamps/Welfare | $ | $ | $ |
| Unemployment Benefits | $ | $ | $ |
| Monthly GROSS Rental Income from All Properties** | $ | $ | $ |
| Other Income  *Fluctuates* | $ /-5K | $ | $ |
| Total (Gross Income) | $ | $ | $ |

*Alimony, Child Support or separate maintenance income need not be disclosed if you do not choose to have it considered for repaying your mortgage debt.

**Include Rental income received from all properties you own EXCEPT a property for which you are seeking mortgage assistance.

## SECTION 8: INCOME DOCUMENTATION

| Income Sources for **ANY** Borrower(s) | Documents required |
|---|---|
| Salary/Hourly wages income | For Each Borrower who is salaried or hourly wage income, provide 2 most recent paystubs that reflects at least 30 days of year- to-date income |
| Self Employment income | Provide your most recent signed and dated quarterly or year-to date profit and loss statement |
| Unemployment income | Provide documentation showing the amount and frequency of the benefits, such as letters, exhibits or benefits statement from the provider |
| Tips, commission, bonus, housing allowance or overtime. | Describe the type of income, how frequently you receive the income and third party documentation describing the Income (e.g., employment contracts or printouts documenting tip income). |
| Food Stamps, social security, disability, death benefits, pension, public assistance, adoption assistance. | Provide documentation showing the amount and frequency of the benefits, such as letters, exhibits, disability policy or benefits statement from the provider and receipt of payment (such as two most recent bank statements or deposit advices). |
| Income from rental properties that are not your principal residence | If rental income is not reported on Schedule E, provide a copy of the current lease agreement with bank statements showing deposit of rent checks. Provide your most recent Federal Tax return with all schedules, including Schedule E. |
| Alimony, child support, or separation maintenance payments. | • Provide a copy of the divorce decree, separation agreement, or other written legal agreement filed with the court that' states the amount of the payments and the period of time that you are entitled to receive them.  AND<br><br>• Copies of your two most recent bank statements or deposit advices showing you have received payment.<br><br>**Notice: Alimony, child support or separate maintenance income need not be disclosed if you do not choose to have it considered for repaying your mortgage debt.** |

**All borrowers must include a signed IRS Form 4506-T or 4506T-EZ regardless of income source(s).**

| SECTION 7(a): COMBINED ASSETS | | SECTION 7(b): MONTHLY HOUSING | | SECTION 7(c): MONTHLY MISCELLANEOUS EXPENSES | |
|---|---|---|---|---|---|
| Total Checking Account(s) | $ | Credit Cards/Installment Debt (Total Min. Payment) | $ | Health Insurance | $ |
| Total Savings Account(s) / Money Market | $ | Child support/ Alimony | $ | Medical Bills | $ |
| Stocks / Bonds / CD's | $ | Car Payments | $ | Student Loan Payments | $ |
| 401k / Employee Stock Ownership Plan | $ | Mortgage payments on other Properties | $ | Religious / Charitable Contributions | $ |
| Car(s) (Estimated value less any loans outstanding) | $ | Gas | $ | Personal / Life Insurance | $ |
| Life Insurance (Whole Life / Term) | $ | Food | $ | Club / Union Dues | $ |
| IRA / Keogh Accounts | $ | Auto Insurance | $ | Cable TV / Entertainment | $ |
| Other Assets | $ | Auto Maintenance | $ | Dry Cleaning / Clothing | $ |
| | | Bank / Finance Loan Payments | $ | School Tuition | $ |
| | | Other Expenses | $ | Other Expenses | $ |
| Description of Other Assets: | | Description of Other Expenses: | | Description of Other Expenses: | |
| **Total Assets** | **$** | **Total Housing Expenses** | **$** | **Total Misc. Expenses** | **$** |

**EXHIBIT-E03    SUBSTITUTED LEASE AGREEMENT    Page 5 of 8**

## SECTION 9: HARDSHIP DETAILS

I am (We are) requesting review for mortgage assistance.

I am (We are) having difficulty in making my monthly payments because of financial difficulties created by (check all that apply) :

Date Hardship(s) began is _____/_____ (MM/YY)

| | |
|---|---|
| ☑ My household income has declined. | ☑ My monthly debt payments are excessive. |
| ☑ My expenses have increased | ☑ My cash reserves are insufficient to maintain my current mortgage |
| ☐ Death of primary or secondary wage earner | ☐ Divorce/separation |
| ☐ Disability or serious injury of a borrower or family member | ☐ Medical expenses, surgeries, extended illness or disease |
| ☐ I am unemployed (if yes, please attach award letter/ bank statement)<br><br>When did (will) your unemployment benefits start? _____/_____/_____ (MM/DD/YYYY)<br><br>When did (will) your unemployment benefits end? _____/_____/_____ (MM/DD/YYYY) | Others: |

Explanation (continue on a separate sheet of paper if necessary):

*The value of the House has dropped in Half, my business partner made some bad deals which allowed a Hostile take over and I lost all my interest in the company, I was forced to go back and restart my old business.*

## SECTION 10: NON-BORROWER CONSENT FORM

If you wish for income from individuals not listed on the mortgage to be considered in qualifying for a modification, Ocwen is required to review all non-borrower credit reports.

A **non-borrower** is defined as someone who lives at the property but is not on the original mortgage note (and may or may not be on the original security instrument), but whose income will be used *to support the modified mortgage payment.*

This form will authorize Ocwen to pull a credit report for occupancy verification as well as to support that this non-borrower income has not been utilized in a prior modification.

**WITHOUT THIS AUTHORIZATION, NON-BORROWER INCOME CANNOT BE CONSIDERED AND MAY RESULT IN A DELAY IN PROCESSING YOUR APPLICATION.**

**Non-Borrower 1**                                          **Non-Borrower 2**

_____          _____
Print Name                                                   Print Name

_____-____-_____  _____/_____/_____     _____-____-_____  _____/_____/_____
Social Security Number   Date of Birth (MM/DD/YYYY)    Social Security Number   Date of Birth (MM/DD/YYYY)

**Acknowledgements (This must be completed but will only be used if being evaluated for the Government's Making Home Affordable Program)**

1. I understand that Ocwen will pull a current credit report on all non-borrowers whose income is submitted as part of the evaluation and relied upon to support the modified mortgage payment.

2. I confirm that my income was not utilized in a prior modification.

_____  _____/_____/_____   _____  _____/_____/_____
Non-Borrower 1 Signature   Date(MM/DD/YYYY)     Non-Borrower 2 Signature   Date(MM/DD/YYYY)

**EXHIBIT-E03        SUBSTITUTED LEASE AGREEMENT        Page 6 of 8**

**SECTION 1: CONSENT FOR RELEASE OF INFORMATION**

### Third-Party Authorization Form

Ocwen Loan Servicing, LLC                                     7140192208

**Mortgage Lender/Servicer Name ("Servicer")**          **[Account/Loan] Number**

The undersigned Borrower and Co-Borrower (if any) (individually and collectively, "Borrower" or "I"), authorize the above Servicer and the following third parties

| | |
|---|---|
| **[Counseling Agency]** | **[Agency Contact Name and Phone Number]** |
| **[State HFA Entity]** | **[State HFA Contact Name and Phone Number]** |
| Teresa Moore | 818-206-1146 |
| **[Other Third Party]** | **[Third Party Contact Name and Phone Number]** |
| Roommate + Business Consultant | |

**[Relationship of Other Third Party to Borrower and Co-Borrower]**

(individually and collectively, "Third Party") to obtain, share, release, discuss, and otherwise provide to and with each other public and non-public personal information contained in or related to the mortgage loan of the Borrower. This information may include (but is not limited to) the name, address, telephone number, social security number, credit score, credit report, income, government monitoring information, loss mitigation application status, account balances, program eligibility, and payment activity of the Borrower. I also understand and consent to the disclosure of my personal information and the terms of any agreements under the Making Home Affordable or Hardest Hit Fund Programs by Servicer or State HFA to the U.S. Department of the Treasury or their agents in connection with their responsibilities under the Emergency Economic Stabilization Act.

The Servicer will take reasonable steps to verify the identity of a Third Party, but has no responsibility or liability to verify the identity of such Third Party. The Servicer also has no responsibility or liability for what a Third Party does with such information.

This Third-Party Authorization is valid when signed by all borrowers and co-borrowers named on the mortgage and until the Servicer receives a written revocation signed by any borrower or co-borrower.

### I UNDERSTAND AND AGREE WITH THE TERMS OF THIS THIRD-PARTY AUTHORIZATION:

| | | | | | |
|---|---|---|---|---|---|
| _____ | _____ | __/__/___ | _____ | _____ | __/__/___ |
| Borrower Name | Signature | Date(MM/DD/YYYY) | Co-Borrower 1 Name | Signature | Date(MM/DD/YYYY) |

| | | |
|---|---|---|
| _____ | _____ | __/__/___ |
| Co-Borrower 2 Name | Signature | Date(MM/DD/YYYY) |

**SECTION 2: INSTRUCTION FOR IRS FORM 4506T-EZ (tax return)**
**SEND ONE COPY OF THE 4506T/4506T-EZ FORM TO THE IRS AND ANOTHER COPY OF THE 4506T-EZ WITH ALL OTHER MODIFICATION DOCUMENTS**

| STEP 1 | **All borrowers must SIGN and DATE the form.** (Signatures should be exactly in the same name as provided in your original return.) |
|---|---|
| STEP 2 | *Fax the signed form to Ocwen at 1(407) 737-6174 **OR** Scan and email the signed form to Ocwen at mod@ocwen.com* |
| STEP 3 | *Fax the signed form to the IRS at number below.*<br>*(Based on your state of residence, use the table below to determine the correct fax number.)* |

| State | Fax Number |
|---|---|
| Florida, Georgia, North Carolina, South Carolina | 1(770) 455-2335 |
| Alabama, Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, or A.P.O. or F.P.O. address | 1(512) 460-2272 |
| Alaska, Arizona, California, Colorado, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington, Wisconsin, Wyoming | 1(559) 456-5876 |
| Arkansas, Connecticut, Delaware, District of Columbia, Maine, Maryland, Massachusetts, Missouri, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Vermont, Virginia, West Virginia | 1(816) 292-6102 |

**EXHIBIT-E03        SUBSTITUTED LEASE AGREEMENT        Page 7 of 8**

Form **4506T-EZ**

(Rev. January 2012)

Department of the Treasury
Internal Revenue Service

### Short Form Request for Individual Tax Return Transcript

► Request may not be processed if the form is incomplete or illegible.

OMB No. 1545-2154

**Tip.** Use Form 4506T-EZ to order a 1040 series tax return transcript free of charge, or you can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Order a Transcript" or call 1-800-908-9946.

| 1a Name shown on tax return. If a joint return, enter the name shown first. | 1b First social security number or individual taxpayer identification number on tax return |
|---|---|
| John R. Gschwend | ▇▇▇▇▇▇▇ |
| 2a If a joint return, enter spouse's name shown on tax return. | 2b Second social security number or individual taxpayer identification number if joint tax return |
| Sabrina E. Gschwend | ▇▇▇▇▇▇▇ |

3 Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)

P.O. Box 257 Pearl City HI 96782

4 Previous address shown on the last return filed if different from line 3 (see instructions)

5 If the transcript is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax information.

| Third party name | Telephone number |
|---|---|
| Ocwen Loan Servicing, LLC  Attn: Home Retention Department | (800) 746-2936 |
| Address (including apt., room, or suite no.), city, state, and ZIP code | |
| 1661 Worthington Road, Suite 100  West Palm Beach, FL 33409 | |

**Caution.** If the tax transcript is being mailed to a third party, ensure that you have filled in line 6 before signing. Sign and date the form once you have filled in this line. Completing this step helps to protect your privacy. Once the IRS discloses your IRS transcript to the third party listed on line 5, the IRS has no control over what the third party does with the information. If you would like to limit the third party's authority to disclose your transcript information, you can specify this limitation in your written agreement with the third party.

6  **Year(s) requested.** Enter the year(s) of the return transcript you are requesting (for example, "2008"). Most requests will be processed within 10 business days.

<u>  2009  </u>     <u>  2010  </u>     <u>  2011  </u>     <u>        </u>

☐ Check this box if you have notified the IRS or the IRS has notified you that one of the years for which you are requesting a transcript involved **identity theft** on your federal tax return.

**Note.** If the IRS is unable to locate a return that matches the taxpayer identity information provided above, or if IRS records indicate that the return has not been filed, the IRS may notify you or the third party that it was unable to locate a return, or that a return was not filed, whichever is applicable.

**Caution.** Do not sign this form unless all applicable lines have been completed.

**Signature of taxpayer(s).** I declare that I am the taxpayer whose name is shown on either line 1a or 2a. If the request applies to a joint return, **either** husband or wife must sign. **Note.** For transcripts being sent to a third party, this form must be received within 120 days of the signature date.

| | | Phone number of taxpayer on line 1a or 2a |
|---|---|---|
| **Sign Here** ► | John R. Gschwend  Signature (see instructions)  Date 3-21-13 | |
| ► | Spouse's signature  Date 3-21-13 | |

For Privacy Act and Paperwork Reduction Act Notice, see page 2.     Cat. No. 54185S     Form **4506T-EZ** (Rev. 1-2012)

**OCWEN**

HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

10/2/2013

John R Gschwend Salina E Gschwend
PO Box 757
Pearl City, HI 96782

Loan Number:        7140192308
Property Address:   13307 Providence Pl Bakersfield, CA 93314

# Shared Appreciation Modification Offer

Dear John R Gschwend

Do you owe more than your house's current value? Are you tired of feeling like you are "underwater?" Do you wish you could make affordable payments at a lower rate on the amount your house is actually worth?

If so, we are happy to be able to offer you a Shared Appreciation Modification. As part of this program, we will reduce your interest rate and the principal amount used to calculate your interest.

The enclosed Shared Appreciation Modification Agreement presents the proposed terms of your modified mortgage, and the Frequently Asked Questions on the next few pages answer the most popular questions about the program.

How to Take Advantage of This Offer:

## STEP 1  COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE

To accept this offer, you must sign and return both copies of the Shared Appreciation Modification Agreement and all Disclosures (collectively the "Agreement") in the enclosed, pre-paid envelope to Ocwen Loan Servicing LLC Attn: SAM Modification Processing, PO Box 24737, West Palm Beach, FL 33416-9838 by 10/15/2013. If the Agreement has notary provisions at the end, you must sign both copies in front of a notary public and return the notarized copies to us. We encourage you to make a copy of all documents for your records. If you do not send both copies of the signed Agreement and Disclosures by the above date, you must contact us if you still wish to be considered for this program and have your loan modified.

## STEP 2  MAKE YOUR INITIAL PAYMENT AND TRIAL PERIOD PAYMENT ON TIME

To take advantage of this great offer, you must make a initial payment in place of your normal monthly payment.

> Initial payment:  **$1,942.94 by 10/15/2013**

Make your initial payment payable to: **Ocwen Loan Servicing**. Be sure to include your **Loan Number**

1

597225
NMLS #: 1852
OSAM020211v2

*Use ONE of the following Payment options:*

| *OPTION1* | *OPTION2* | *OPTION3* |
|---|---|---|
| OVERNIGHT MAIL of Money Order OR Certified Check | BANK WIRE & Email* | MoneyGram OR Western Union |

*OPTION1*

OVERNIGHT MAIL of
Money Order OR Certified Check
SEND TO :
Ocwen Loan Servicing, LLC.
ATTN: Cashiering Department
1661 Worthington Road,
Suite 100
West Palm Beach, FL 33409

*OPTION2*

Bank:  Wells Fargo Bank, NA
         San Francisco, CA
ABA:   121000248
Account Name:
Ocwen Loan Servicing, LLC
Account Number:
4124823352
Reference:
Loan Number, Property Address, and
Borrower Name

*ALSO send email to
Transferfunds@ocwen.com with the
details of the wire.

*OPTION3*

MoneyGram Blue & White
RECEIVER CODE:   2355
Payable to:
OCWEN LOAN SERVICING, LLC
City: ORLANDO
State: FLORIDA
REFERENCE: LOAN NUMBER
7140192308
AGENT LOCATER: (800) 926-9400

WesternUnion QuickCollect
Code City: Ocwen
State: FL
Reference: Loan # 7140192308

Be certain to make the initial payment on or before the date it is due. If the payments are made after their due dates or in amounts different from the amount required, your loan may not be modified.

To better understand the proposed terms of this program, please read the attached Frequently Asked Questions, the Shared Appreciation Modification Agreement, and Disclosures. We look forward to hearing from you by 10/15/2013.

A VIJAY DANIEL has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents.

Sincerely,


Ocwen Loan Servicing, LLC

S97225
NMLS #: 1852
OSAM020211v2

Loan Number 7140192308

**EXHIBIT-E04    LOAN MODIFICATION AGREEMENT    Page 2 of 13**

HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

# Frequently Asked Questions:

As part of your introduction to the Shared Appreciation Modification (SAM) program, Ocwen Loan Servicing, LLC (Ocwen) would like to answer a few questions that you might have at this time. Please rest assured that we value your business and look forward to assisting you with any other questions you may have.

**Q. Who is eligible for this program?**
If you meet all of the following criteria, you may be eligible for the SAM program:
  1. You owe more than your current house's value or you are "underwater," and
  2. You do not qualify for the government's Home Affordable Modification Program (HAMP)

**Q. What is SAM?**
SAM is a program that offers a bigger up-front discount on both the principal and interest of your mortgage loan when compared to almost all typical modifications. With this program, you will:
  1. Only make payments on the amount that your house is actually worth.
  2. Have a chance to earn the permanent forgiveness of the rest of your debt.

In order to keep these benefits, you have to make your payments on time and comply with the terms of the program.

In exchange for these benefits, the owner of your loan may receive up to 25% of any increase in your house's value. This is known as "shared appreciation." You will still receive the majority (75%) of any increase in value.

For example, if your loan is modified from $200,000 to $150,000 and you later sell your house for $200,000, the owner of your loan could receive as much as 25% or $12,500 ($50,000 x 25%) of the appreciation while you would receive 75% or $37,500 ($50,000 x 75%).

**Q. What happens to the rest of the money?**
The portion of the amount owed that is above the value of your home at the time of the modification is known as the "Deferred Amount" or the non-interest bearing amount. If you comply with the terms of the Agreement and remain current on your payments, one-third of the Deferred Amount will be permanently forgiven each year until the entire Deferred Amount is forgiven (3 years from the date of the modification).

**Q. What is the purpose of SAM?**
The SAM program was created to help people who owe more than their house is currently worth. The program decreases the interest bearing principle balance owed to a level that is in line with the house's current value. All or a portion of the Deferred Amount owed may be permanently forgiven if you comply with the terms of the Agreement.

**Q. What is the Interest Bearing Principal Balance?**
The Interest Bearing Principal Balance is the portion of your modification balance on which you will pay interest and is also the amount against which any increase in value will be measured to determine any appreciation when you sell or refinance your property or at the time of loan maturity. This amount is the estimated value of your property at the time of modification.

**Q. What is the Deferred Amount?**
The Deferred Amount is the portion of your modification balance on which you will not pay interest and is also the amount that is eligible to be permanently forgiven. This amount represents the balance that is in excess of the estimated value of your property at the time of modification.

On each anniversary of your modification effective date, as long as you have not been in default to the extent that three (3) or more monthly payments were overdue and unpaid on the last day of any month, Ocwen will permanently forgive one-third (1/3) of the Deferred Amount until it is reduced to zero.

If you chose to pay off your loan before the third anniversary, but after thirty (30) days from the time the modification becomes effective, and you are not in default, the entire Deferred Amount will be deducted from your pay off amount.

3



HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

**Q. Why do I have to share 25% of the appreciation?**
The shared appreciation, upon sale or refinance of the property or at loan maturity, allows Ocwen to offer larger discounts by increasing the Deferred Amount. Without the shared appreciation, it would not be possible to offer you the same level of discount. In addition, if you sell your property later or refinance your loan and there has been no appreciation in value, the owner of the loan will not be entitled to any appreciation, so you benefit regardless of what happens with your property.

**Q. Do I have to pay you more if I add improvements to my home?**
The shared appreciation amount is a portion of whatever appreciation in value occurs after the modification, including any appreciation due to improvements made to the property. However, Ocwen will give you credit for any capital improvements made to your home after the modification effective date, if you provide adequate documentation to support your capital improvement claim.

**Q. If the value of my home rises high enough will Ocwen get more than the Deferred Amount?**
No, you will never be required to pay more than the total Deferred Amount.

**Q. What happens if I refinance my loan?**
If you refinance your loan after entering the SAM program, you must notify Ocwen within 30 to 60 days before the date you wish to refinance so that Ocwen can order an appraisal and third-party valuation to determine the appreciation amount. The owner of your loan may receive up to 25% of any increase in value of your property as determined at the time of refinancing.

**Q. How is the valuation completed?**
In the case of refinancing or note maturity, Ocwen will establish a valuation of the property at your expense. This will include an appraisal of the property from a licensed appraiser and may also include a third-party valuation based on such appraisal. In the case of a third-party sale, the gross sale price of the property will serve as the value.

**Q. How is the appreciation calculated?**
The appreciation of the property will be calculated as the difference between the valuation of the property (less any capital improvements) at the time of sale, note maturity, or refinance and the amount of Interest Bearing Principal Balance at the time of the agreement.

For example, if your Interest Bearing Principal Balance at the time of modification is $200,000 and you sell your house 5 years later for $250,000, the appreciation amount would be $50,000 ($250,000 - $200,000).

**Q. How do I get more information?**
If you have any questions or would additional information, please contact Ocwen:

**OCWEN CONTACT INFORMATION HOURS:**
Monday – Friday:  8:00 am – 9:00 pm ET
Saturday:        8:00 am – 5:00 pm ET
Sunday:          9:00 am – 9:00 pm ET
**PHONE NUMBER: (800) 746-2936**

4

597225
NMLS #: 1852
OSAM020211v2

_____[Space Above This Line For Recording Data]_____

# LOAN MODIFICATION AGREEMENT
# (SHARED APPRECIATION)

PLEASE READ THIS ENTIRE DOCUMENT CAREFULLY BEFORE SIGNING. THIS AGREEMENT AMENDS YOUR LOAN IN A NUMBER OF IMPORTANT WAYS, INCLUDING REDUCING THE PRINCIPAL YOU OWE. YOUR LOAN, AS AMENDED BY THIS LOAN MODIFICATION AGREEMENT, IS A Thirty Two (32) YEAR SHARED APPRECIATION LOAN. A BALLOON PAYMENT OF PRINCIPAL EQUIVALENT TO 25% OF THE APPRECIATION OF THE PROPERTY WILL BE REQUIRED AT MATURITY. YOUR MORTGAGE WILL SECURE AS A FUTURE ADVANCE ANY AMOUNT OF THE "SHARED APPRECIATION AMOUNT" ACCRUING OR APPLIED IN THE FUTURE.

Borrower ("I" or "my"):  John R Gschwend Salina E Gschwend

Servicer ("Servicer"): Ocwen Loan Servicing, LLC, NMLS # 1852

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 6/15/2006

Loan Number: 7140192308

Property Address: 13307 Providence Pl Bakersfield, CA 93314        ("Property")

Servicer is offering this Loan Modification Agreement ("Agreement"), dated 10/2/2013, which modifies the terms of Borrower's home loan obligations as described below:

A.      the Mortgage, Deed of Trust, or Security Deed (the "Mortgage"), dated and recorded in the public records of Kern County,

B.      the Note, of the same date and secured by the Mortgage (the "Note"), which covers the real and personal property described in the Mortgage located at 13307 Providence Pl Bakersfield, CA 93314 (the "Property").

Pursuant to our mutual agreement to modify Borrower's Note and Mortgage (collectively the "Loan Documents") and in consideration of the promises, conditions and terms set forth below, the parties agree as follows:

1       Preconditions to Modification. I understand and agree that:

    A   TIME IS OF THE ESSENCE under this Agreement:

    B   The Loan Documents shall not be modified unless and until (i) I successfully complete the Trial Period (as defined below), (ii) the title insurance company insuring the lien of the Mortgage assures Servicer (or otherwise confirms to its satisfaction) that the Mortgage, as modified by this Agreement, continues to enjoy lien priority for the full amount of the Note and (iii) I receive from the Servicer a copy of this Agreement signed by the Servicer.

    C   In order for the terms of this Agreement to become effective, I promise to make an initial payment of  $1,942.94 on or before 10/15/2013 and one (1) Trial Payment of principal and interest in the amount of  $1,942.94 to Servicer on or before 11/1/2013 ("Trial Period").

    D   If I successfully complete the Trial Period, the "Loan Documents" will be modified pursuant to the terms of this Agreement. However, I acknowledge and agree that if I fail to send any payment on or before the respective due date, the Servicer's modification offer will be null and void and this Agreement will not become effective, and I further understand and acknowledge that the Servicer may commence or resume foreclosure or other activities related to the delinquency of my Loan under its original terms. Acceptance and application of late payments during the Trial Period will not constitute payment in accordance with Section 1.C. above.

1

2       The Modification. If all preconditions to the modification set forth in Section 1 of this Agreement have been met, then the Loan Documents shall automatically become modified on 12/1/2013 (the "Modification Effective Date"). I understand that if I have failed to make any payments as a precondition to this modification, this modification will not take effect and this Agreement will not be effective. If this Agreement becomes effective, the Loan Documents will be modified to include the following new terms which are acknowledged and agreed:

A   New Principal Balance: After successful completion of the Trial Period and other conditions set forth in Section 1 above, the new principal balance of my Note shall be $590,293.78 (the "New Principal Balance"). This includes, to the extent permitted by law, all amounts and arrearages that are past due (including any unpaid late charges) less any amounts paid to the Servicer but not previously credited to my Loan. A portion of the New Principal Balance shall be deferred and may be forgiven as provided in Sections 2.B and 2.C. of this Agreement.

B   Deferred Principal Balance: $195,778.73 of the New Principal Balance shall be deferred (the "Deferred Principal Balance"). The Deferred Principal Balance shall be treated as a non-interest bearing principal forbearance and I am not obligated to pay interest or make monthly payments on any portion of it.

C   Forgiveness of Deferred Principal Balance: 100% of the Deferred Principal Balance is eligible for forgiveness in equal installments over three (3) years. Unless I default on my new payments to the extent that three (3) or more monthly payments become overdue and unpaid on the last day of any month, then the Servicer shall forgive one-third of the outstanding portion of my Deferred Principal Balance on each of the first, second and third anniversaries of the Modification Effective Date, respectively. Forgiveness of any such amounts will not result in a new payment schedule.

D   Interest Bearing Principal Balance and Interest Rate: The portion of the New Principal Balance that is not deferred (i.e., New Principal Balance less Deferred Principal Balance) shall bear interest (the "Interest Bearing Principal Balance"). The Interest Bearing Principal Balance shall be $394,515.05 and interest at the rate of 2.00003% shall begin to accrue thereon as of 12/1/2013. If a default rate of interest is permitted under the Loan Documents, then in the event of any default under the Loan Documents, as amended by this Agreement, the interest that will be due will be the rate set forth in this Section 2.D.

E   New Payment Date, Schedule and Amounts to be Repaid: The first new monthly payment on the Interest Bearing Principal Balance shall be due on 12/1/2013.

The payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-Loan's Maturity | 2.00003% | 12/1/2013 | $1,371.54 | $ 571.40, may adjust periodically | $1,942.94, may adjust periodically | 12/1/2013 | 392 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore the total monthly payment may change accordingly.

I shall pay in full the Interest Bearing Principal Balance, all accrued and unpaid interest thereon and all other amounts due and owing by the earliest of: (i) the date on which my Note matures and is due and payable in full (the "Maturity Date") , (ii) a refinance or payoff of the entire Interest Bearing Principal Balance (a "Refinance Transaction"), or (iii) a sale or any transfer of the Property or a beneficial interest in the Property without the Servicer's consent that may require immediate payment in full under the terms of the Loan Documents (a "Sale Transaction"). I may also be required to pay the "Shared Appreciation Amount" as provided in Section 3 of this Agreement.

F   Pre-Payment of Note: Provided I am not in default under the terms of this Agreement, in any pre-payment of the Note more than thirty (30) calendar days after the Modification Effective Date, the portion of the Deferred Principal Balance not yet forgiven pursuant to Section 2.C. shall be deducted from the payoff amount.

2

G  The terms in this Section 2 shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, any provisions for an adjustable, step or simple interest rate, interest-only or other payment options, or any negative amortization features that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance. **I WILL BE IN DEFAULT IF I DO NOT COMPLY WITH THE TERMS OF THE LOAN DOCUMENTS, AS MODIFIED BY THIS AGREEMENT.**

3    Shared Appreciation.

IF THE PROPERTY SECURING THE NOTE INCREASES IN VALUE AFTER THE MODIFICATION EFFECTIVE DATE, THERE MAY BE AN ADDITIONAL PAYMENT DUE, DEFINED IN THIS AGREEMENT AS THE "SHARED APPRECIATION AMOUNT". THE SHARED APPRECIATION AMOUNT RECOGNIZES CERTAIN IMPROVEMENTS I MAY MAKE TO THE PROPERTY IN THE FUTURE. IN NO EVENT SHALL THE SHARED APPRECIATION AMOUNT COLLECTED BE MORE THAN MY DEFERRED PRINCIPAL BALANCE ( $195,778.73).

A. In addition to the amounts I am obligated to pay pursuant to Section 2 of this Agreement, upon the earliest of (i) the Maturity Date, (ii) a Refinance Transaction, or (iii) a Sale Transaction, I shall also pay principal in an amount equal to 25% of the future increase in value, if any, of the Property as more fully described below. This additional payment of principal is referred to in this Agreement as the "Shared Appreciation Amount". The Shared Appreciation Amount shall be determined by the Servicer as follows. (Note, the terms "Valuation" and "Subsequent Capital Improvements" as used below are defined in Sections 3.B and 3.C of this Agreement).

I   Maturity Date: The Shared Appreciation Amount, if any, at the Maturity Date shall be 25% of the difference between the Valuation of the Property as of such date and    $394,515.05 (the Interest Bearing Principal Balance as of the Modification Effective Date) less (i) any credit determined by Servicer for Subsequent Capital Improvements and (ii) any amount of appreciation in excess of the Deferred Principal Balance.

II  Refinance Transaction: The Shared Appreciation Amount, if any, in connection with a Refinance Transaction shall be 25% of the difference between the Valuation of the Property as of the closing date of the Refinance Transaction and    $394,515.05 (the Interest Bearing Principal Balance as of the Modification Effective Date) less (i) any credit determined by Servicer for Subsequent Capital Improvements and (ii) any amount of appreciation in excess of the Deferred Principal Balance.

III Sale Transaction: If the Property is sold, the manner in which the Shared Appreciation Amount, if any, is determined by the Servicer depends on whether or not the sale is at "Arm's Length." If the purchaser is a party unrelated to the seller, then the Servicer will generally determine that the transaction is Arm's Length. If, however, the purchaser is related to the seller, or other circumstances indicate that the transaction was not Arm's Length, or if there is a transfer of the Property or any beneficial interest in the Property without the Servicer's consent that may require immediate payment in full under the terms of the Loan Documents, then the Servicer may determine that the Sale Transaction is not Arm's Length.

   a   If the Sale Transaction is Arm's Length, then the Shared Appreciation Amount, if any, will be equal to 25% of the difference between the gross sale price of the Property and    $394,515.05 (the Interest Bearing Principal Balance of the Modification Effective Date), less (i) any credit determined by Servicer for Subsequent Capital Improvements and (ii) any amount of appreciation in excess of the Deferred Principal Balance .

   b   If the Sale Transaction is not Arm's Length, then the Shared Appreciation Amount, if any, will be equal to 25% of the difference between the Valuation of the Property (as defined in Section 3.B.) as of the date of the sale or transfer and    $394,515.05 (the Interest Bearing Principal Balance as of the Modification Effective Date), less (i) any credit determined by Servicer for Subsequent Capital Improvements and (ii) any amount of appreciation in excess of the Deferred Principal Balance.

B. "Valuation" shall mean the dollar amount of the value of the Property determined by the Servicer under the following terms and conditions. In all of the circumstances enumerated in Section 3.A. other than an Arm's Length Sale Transaction, the Valuation shall include a Property appraisal from an independent licensed appraiser and, at Servicer's option, a third-party valuation based on such appraisal. I acknowledge and agree that such appraisal and third-party valuation (if any) are acceptable to me for assessing the value of the Property.

3

I also agree to provide Servicer with written notice of my intent to cause or permit a Refinance Transaction or Sale Transaction no more than sixty (60) days and not less than thirty (30) days in advance of said Refinance Transaction or Sale Transaction. At the time notice is provided, I agree to deliver documentation to the Servicer evidencing the gross amount of proceeds expected from or to be paid under such Refinance Transaction to enable Servicer to establish a Valuation of the Property and determine the Shared Appreciation Amount with respect to the Refinance Transaction. In the case of a Sales Transaction, I agree to provide the sales contract and any other information reasonably required by Servicer to enable Servicer to determine (i) whether or not it is an Arm's Length transaction and (ii) the Shared Appreciation Amount with respect to the Sales Transaction. I further agree and acknowledge that failure to provide the required notice of a Refinance Transaction or Sale Transaction may result in a delay in the Refinance Transaction or Sale Transaction and in my ability to pay off the Note and get the Mortgage released or reconveyed. **I agree that Servicer will not be responsible for any loss, damage, expense, claim, proceeding, cause of action, encumbrance, order, charge, cost or reduction in value caused or contributed to, directly or indirectly, by my failure to give such written notice of a Refinance Transaction or Sale Transaction to Servicer.**

C. "Subsequent Capital Improvements" that will qualify for credit under the Shared Appreciation Amount include only those improvements that are initiated and completed after the Modification Effective Date and are permanent structural improvements that have directly enhanced the value of the property. Repairs to the Property do not qualify as a Subsequent Capital Improvement. Servicer shall use the general guidelines adopted by the Internal Revenue Service to determine the difference between a Subsequent Capital Improvement and a repair. I agree to provide Servicer with the necessary support documentation, including, but not limited to, invoices and payment confirmation so that Servicer can determine whether any amounts for Subsequent Capital Improvements should be credited to the Shared Appreciation Amount. I acknowledge that failure to provide the necessary support documentation will result in no credit being provided for any Subsequent Capital Improvement I performed to the Property.

4    **Additional Agreements.** I agree to the following:

A    That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Servicer has waived this requirement in writing.

B    That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Servicer.

C    That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

If this loan is currently escrowed for either taxes or insurance or both taxes and insurance, then Servicer will continue to collect the applicable escrow amount in addition to the monthly principal and interest payment. I agree to pay Servicer on the day payments are due under the Note and Mortgage as amended by this Agreement, until the loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Servicer under the Note and Mortgage; (d) mortgage insurance premiums, if any, or any sums payable to Servicer in lieu of the payment of mortgage insurance premiums in accordance with the Note and Mortgage; and (e) any community association dues, fees, and assessments that Servicer requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Servicer all notices of amounts to be paid under this Section 4.C. I shall pay Servicer the Funds for Escrow Items unless Servicer waives my obligation to pay the Funds for any or all Escrow Items.

Servicer may waive my obligation to pay to Servicer Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Servicer and, if Servicer requires, shall furnish to Servicer receipts evidencing such payment within such time period as Servicer may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Note and Mortgage, as the phrase "covenant and agreement" is used therein. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Servicer may exercise its rights under the Note and Mortgage and this Agreement and pay such amount and I shall then be obligated to repay to Servicer any such amount. Servicer may revoke the waiver as to any or all Escrow Items at any time by a notice given

4

in accordance with the Note and Mortgage, and, upon such revocation, I shall pay to Servicer all Funds, and in such amounts, that are then required under this Section 4.C.

Servicer may, at any time, collect and hold Funds in an amount (a) sufficient to permit Servicer to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA") and (b) not to exceed the maximum amount a Servicer may require under RESPA. Servicer shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Servicer, if Servicer is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Servicer shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Servicer shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Servicer pays me interest on the Funds and applicable law permits Servicer to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Servicer shall not be required to pay me any interest or earnings on the Funds. Servicer and I may agree in writing, however, that interest shall be paid on the Funds. Servicer shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Servicer shall account to me for the excess funds in accordance with RESPA. If there is a shortage or deficiency of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the shortage or deficiency in accordance with RESPA, but in no more than twelve (12) monthly payments.

Upon payment in full of all sums secured by the Note and Mortgage and this Agreement, Servicer shall promptly refund to me any Funds held by Servicer.

D   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Servicer and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

E   That, as of the Modification Effective Date, I understand that the Servicer will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

F   That, I will cooperate fully with Servicer in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Servicer's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Servicer does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

G   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Servicer's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement. I agree to deliver any such corrective documents within ten (10) days after I receive the Servicer's written request for such replacement.

H   That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

I   Severability: Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be or become prohibited or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without

5

invalidating the remainder of such provision or the remaining provisions of this Agreement..

J    In the case of multiple Borrowers, references to "I" and "my" throughout this Agreement shall mean "we" and "our", respectively.

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here →  _John R. Gschwend_  _____ 10 / 14 / 2013 ___ Date
John R Gschwend

Sign Here →  _Selina E Gschwend_  _____ 11 / 14 / 2013 ___ Date
Salina E Gschwend

*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below. If no other title holders exist, please leave this section blank and return it with the rest of the agreement.

Sign Here →  _____    _____ / _____ / _____ Date

Sign Here →  _____    _____ / _____ /. _____ Date

Servicer  _____    BY  _____

Date  _____

If applicable: _____
        Mortgage Electronic Registration Systems, Inc. – Nominee for Servicer

6

Loan Number 7140192308

Loan Number 7140192308

## BALLOON DISCLOSURE

Borrower(s) ("I" or "me"): John R Gschwend Salina E Gschwend

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 6/15/2006

Loan Number:                7140192308

Property Address:         13307 Providence Pl Bakersfield, CA 93314

THIS BALLOON DISCLOSURE is made this 2nd day of October, 2013, and is incorporated into and shall be deemed to supplement the Modification Agreement (the "Agreement") of the same date given by the undersigned Borrower(s). The Agreement contains a balloon feature that requires the Borrower(s) to make an additional payment based on the future appreciation of the Property.

This means that even if I make all payments full and on time, the loan will not be paid in full by the final payment date. A single balloon payment will be due and payable in full on 7/1/2046, provided that all payments are made in accordance with the loan terms and the interest rate does not change for the entire loan term. The balloon payment may vary depending on the Shared Appreciation Amount as determined at the time of maturity.

Neither Ocwen Loan Servicing, LLC nor any lender to which this loan is transferred or assigned is under any obligation to finance the amount of the balloon payment. In addition, the value of the real estate securing this loan may change during the term of the loan. On the date the balloon payment becomes due, the value of the real estate may not be sufficient to secure a new loan in an amount equal to the balloon payment.

I/we have read the above disclosure and acknowledge receiving a copy by signing below.

\*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below.

_____            _11 - 14 - 2013_____
Borrower                                                              Date

_____            _11 - 14 - 2013_____
Borrower                                                              Date

7

# SHARED APPRECIATION DISCLOSURE

## Important disclosure about the agreement in which you pay a part of any future increase in the value of your home. Please read carefully.

Borrower(s) ("I" or "me"): John R Gschwend Salina E Gschwend
Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 6/15/2006
Loan Number: 7140192308
Property Address: 13307 Providence Pl Bakersfield, CA 93314        ("Property")

THIS SHARED APPRECIATION DISCLOSURE is made this 2nd day of October, 2013, and is incorporated into and shall be deemed to supplement the Modification Agreement (the "Agreement") of the same date given by the undersigned Borrower(s). The Agreement contains a shared appreciation feature that requires the Borrower(s) to make an additional payment based on the future appreciation of the Property.

### SHARED APPRECIATION AMOUNT

I agree to share in any future appreciation of the market value of the Property that occurs between the date of modification and the date the Property is sold, refinanced or the Loan reaches maturity. The Shared Appreciation Amount recognizes certain improvements made to the property after the Modification Effective Date. In no event shall the Shared Appreciation Amount collected be more than the Deferred Principal Balance. The following are examples of how such shared appreciation may be calculated.

### EXAMPLES

This share appreciation modification is available to borrower(s) whose unpaid principal balance exceeds the market value of their Property. Under the shared appreciation modification, the total debt amount owed would be reduced, resulting in a new principal balance made up of two parts: (i) an Interest Bearing Principal Balance that has been adjusted based upon the market value at the time of modification and (ii) a Deferred Principal Balance that does not bear interest and is eligible to be forgiven over a three (3) year period.

For purposes of this disclosure, the scenarios below are based on the following modification terms:

- A market value of $100,000 at the time of modification.
- A New Principal Balance of $130,000.
- An Interest Bearing Principal Balance of $100,000.
- A Deferred Principal Balance of $30,000.

After four (4) years of making each monthly payment on time, I decide to sell the Property and receive an Arm's Length offer to purchase from an unrelated third party in the amount of:

1   $100,000, EQUIVALENT TO NO APPRECIATION AFTER THE MODIFICATION

   Since the market value of the Property remained the same from the date of modification to the date I decided to sell the Property, I would owe a Shared Appreciation Amount of $0.

- All $30,000 of Deferred Principal Balance would have been already forgiven.
- The Shared Appreciation Amount would be equal to 25% of $0 in appreciation (25% x $0 = $0) or $0.
- Therefore, I would not be required to pay anything as the Shared Appreciation Amount.

2   $120,000, EQUIVALENT TO AN APPRECIATION OF TWENTY PERCENT (20%) AFTER THE MODIFICATION

   Since the market value of the Property increased from $100,000 to $120,000 from the date of modification to the date I decided to sell the Property, I would owe a total Shared Appreciation Amount of $5,000.

- All $30,000 of Deferred Principal Balance would have been already forgiven.
- The Shared Appreciation Amount would be equal to 25% of the $20,000 in total appreciation (($120,000 - $100,000) x 25% = $5,000) or $5,000.

8

- Since the Shared Appreciation Amount of $5,000 is less than the Deferred Principal Balance ($30,000), I would be required to pay $5,000 as the Shared Appreciation Amount.
- I would receive the remaining 75% of the appreciation or $15,000 ($20,000 - $5,000 = $15,000).

**3   $120,000, EQUIVALENT TO AN APPRECIATION OF TWENTY PERCENT (20%) AFTER THE MODIFICATION(WITH A SUBSEQUENT CAPITAL IMPROVEMENT MADE TO THE PROPERTY.)**

Similar to example number 2 above, the market value of the Property increased from $100,000 to $120,000 from the date of modification to the date I decided to sell the Property. However, in this instance, I have also produced evidence of a $5,000 Subsequent Capital Improvement made to the property after the modification effective date. As a result, I would receive a credit for the Subsequent Capital Improvement and owe a total Shared Appreciation Amount of $3,750.

- All $30,000 of Deferred Principal Balance would have been already forgiven.
- The Shared Appreciation Amount would be equal to 25% of the $15,000 in appreciation achieved after deduction of the $5,000 for the Subsequent Capital Improvement (($120,000 - $100,000 - $5,000) x 25% = $3,750) or $3,750.
- Since the Shared Appreciation Amount of $3,750 is less than the Deferred Principal Balance ($30,000), I would be required to pay $3,750 as the Shared Appreciation Amount.
- I would receive a full credit of $5,000 for the Subsequent Capital Improvement plus the remaining 75% of the appreciation or $11,250 ($15,000 - $3,750 = $11,250).

**4   $225,000, EQUIVALENT TO AN APPRECIATION OF ONE HUNDRED AND TWENTY FIVE PERCENT (125%) AFTER THE MODIFICATION**

Since the market value of the Property increased from $100,000 to $225,000 from the date of modification to the date I decided to sell the Property, I would owe a total Shared Appreciation Amount of $30,000.

- All $30,000 of Deferred Principal Balance would have been already forgiven.
- The Shared Appreciation Amount would be equal to 25% of the $125,000 in appreciation (($225,000 - $100,000) x 25% = $31,250) or $31,250.
- Since the Shared Appreciation Amount of $31,250 is greater than the Deferred Principal Balance ($30,000), I would only be required to pay $30,000 as the Shared Appreciation Amount.
- I would receive the remaining 75% of the appreciation ($93,750) plus an additional $1,250 ($31,250 - $30,000) because the amount of appreciation actually due cannot exceed the total Deferred Principal Balance of $30,000.

**OTHER CONSIDERATIONS**

1   Borrower(s) should seek independent counseling from a lawyer, a HUD-certified mortgage counselor and/or a tax advisor regarding (A) the trade-off between a current reduction in the size of the mortgage versus the promise to give up part of the future appreciation of your Property, and (B) the tax consequences of the principal forgiveness and shared appreciation features of the Agreement.
2   The U.S. Department of Housing and Urban Development list of approved housing counselors may be found at: http://www.hud.gov/offices/hsg/sfh/hcc/fc/
3   The Agreement could have an effect on future refinancing of the Property. If I refinance or pay off the Note after entering into this Agreement, I will be required to pay part of the appreciation in the value of the Property as described in the Agreement.

I/we have read the above disclosure and acknowledge receiving a copy by signing below.

_____            _11 - 14 - 2013_
Borrower                             Date

_____            _11 - 19 - 2013_
Borrower                             Date

9

To: Teresa Moore                                     Date: 11/25/2013
    4251 Laurel Canyon Blvd.
    Studio City, CA 91604

and 8Th and San Carlos Box S-3234
    Carmel, CA 93921

From: John Gschwend
    P.O. Box 757
    Pearl City, CA 96782

Dear Teresa;

    Due to the lack of your and Roberts response, I am terminating our Lease agreement on the

Bakersfield house effective the last day of November. The agreement allows for termination in writing

and five days notice. This letter will be mailed and emailed today. This does not release you of your

obligation to pay me the withholding funds (currently $10,000.00) from my rent for the attorney's fee if

he was needed. Since he is not needed the funds are to be repaid to me immediately.

_____
John Gschwend

CC: 13307 Providence Place
    Bakersfield, CA 93314

**EXHIBIT-E05        LEASE TERMINATION NOTICE        Page 1 of 2**

LEASE TERMINATION NOTICE

JRG
P.o. box 755
Pearl City, Hi 96782

HONOLULU HI 968

25 NOV 2013 PM 3 T



Equality
FOREVER

Teresa Moore
4251 Laurel Canyon Blvd,
Studio City, CA 91604

91604-2033

*"Our mission is to impartially dispense justice to all residents of the County of Kern"*

| Home | Contacts | Fee Schedules | Forms | Jobs | Records | Self-Help Center | Services | Search |



# Superior Court of California
## County of Kern

| APPEALS | CIVIL | CRIMINAL | FAMILY LAW | JURY | JUVENILE | PROBATE | SMALL CLAIMS | TRAFFIC |

ⓘ Site navigation map: Home > Civil > Search for Case Information

### Civil Search Menu

› Search Case Information by case number, party name, entity name or filing date
› Search Hearing Schedule by case number, bar number, hearing date or filing date
› Search Tentative Rulings
› Search Tips

### General Information

› California Courts Legal Forms
› Civil Case Exhibits
› Court Call - Phone Appearances
› Court Contact Information
› Court Fees
› E-Mail Civil ADR
› E-Mail Civil Limited
› E-Mail Civil Unlimited
› E-Mail Unlawful Detainers
› How to prepare for a court appearance information
› Local Court Rules
› Policies & Procedures
› Self Help Center
› Small Claims Night Court

### Civil Cases Links

› Alternative Dispute Resolution (ADR)
› Limited Civil
› Small Claims
› Unlawful Detainers
› Unlimited Civil

### Civil Mediation Links

› Mediation Resources

## Civil Case Information - Register of Actions / Case Docket

### Civil Case Information

| | |
|---|---|
| **Case Number:** | S-1500-CL-284906 |
| **Case Title:** | GSCHWEND VS MOORE |
| **Case Type:** | UNLAWFUL DETAINER |
| **Filing Date:** | 5/6/2014 |
| **Filing Location:** | METRO DIVISION, 1415 TRUXTUN |
| **Case Status:** | JUDGMENT 7/21/2014 |

**Notes:** 1. Entries are listed in reverse chronological order.
2. Some entries may display odd characters (e.g., x, xx, or o) at the beginning of a sentence. This is a result of the way the data is entered into the register of actions and can be ignored.

### 11 date(s) found, 21 total records, displaying 1-21 records.

| Date | Action |
|---|---|
| 7/21/2014 | **NOTICE PLAINTIFF 1 OF FILING OF PREJUDGMENT CLAIM OF RIGHT TO POSSESSION** |
| | JUDGMENT (CLERK'S DEFAULT/ RESTITUTION ONLY) FILED AND ENTERED. Document Image |
| | APPLICATION FOR ISSUANCE OF WRIT OF POSSESSION; AFFIDAVIT OF DAILY RENTAL VALUE FILED. PLAINTIFF 1 Document Image |
| | WRIT OF POSSESSION ISSUED RETURNED VIA KLEIN-DENATALE BIN |
| | HEARING VACATED JUDGMENT ENTERED ~ calid=2549666 |
| | Vacating calendar hearing. EventCode:4191, CourtDate:08/06/2014, Courtroom:12, SessionNumber:2, Sequence:1, SessionType:OSC, Judge:LSE, SystemDate:5/7/2014 3:34:14 PM |
| 7/16/2014 | **REJECTION/CORRECTION NOTE SENT PREJUDGMENT CLAIM FILED BY PLAINTIFF REJECTED: NOT ACCOMPANIED BY COVERSHEET OR PLEADING, CANNOT BE FILED INDIVIDUALLY** |
| 7/8/2014 | **REQUEST FOR ENTRY OF DEFAULT & CLERKS JUDGMENT PLAINTIFF 1 AS TO TERESA MOORE** |
| 6/30/2014 | **PMT: WRITS ISSUED 70626(A)(1) EFF 7/28/09 Amount of $25.00 for GSCHWEND, JOSH (PL-1). Received from KLEIN DENATALE GOLDNER, check no(s) 130100. Receipt #786236 for amount of $25.00.** |
| 6/27/2014 | **REQUEST FOR ENTRY OF DEFAULT NOT ENTERED PLAINTIFF 1 1E3 INCOMPLETE. RETURNED VIA KLEIN DENATALE, GOLDNER BIN** |
| 6/23/2014 | **REQUEST FOR ENTRY OF DEFAULT BY CLERK ENTERED PLAINTIFF 1 AS TO ALL UNNAMED OCCUPANTS** |
| 6/17/2014 | **REQUEST FOR ENTRY OF DEFAULT BY CLERK ENTERED PLAINTIFF 1 AS TO TERESA MOORE, AN INDIVIDUAL** |
| 6/2/2014 | **PROOF OF SERVICE DEFENDANT 1 AS TO TERESA MOORE, AN INDIVIDUAL** |
| 5/30/2014 | **PROOF OF SERVICE PLAINTIFF 1 AS TO ALL UNKNOWN OCCUPANTS** |
| 5/7/2014 | **Case Event New case created by deputy.** |
| | ADDRESS AND ZIP CODE OF UNLAWFULLY DETAINED PROPERTY 13307 PROVIDENCE PLACE, BAKERSFIELD, CA 93314 |
| | PMT: UNLAWFUL DETAINER FEE > $10,000 GC 70613(A);CCP 1161.2 EFF 10/19/10 Amount of $385.00 for GSCHWEND, JOSH (PL-1). Received from KLEIN DENATALE GOLDNER, check no(s) 129334. Receipt |
| | #777225 for amount of $385.00. |
| | SUMMONS ISSUED AND FILED PLAINTIFF 1 RETURNED VIA KLEIN DENATALE BIN |
| | NOTICE OF COMMENCEMENT OF UNLAWFUL DETAINER ACTION. NOTICE OF COMMENCEMENT OF UNLAWFUL DETAINER ACTION An Unlawful Detainer Complaint (eviction action) has been filed naming you as a defendant. ACCESS TO THE COURT FILE WILL BE DELAYED FOR 60 DAYS EXCEPT TO A PARTY, AN ATTORNEY FOR ONE OF THE PARTIES, OR ANY PERSON WHO; (1) PROVIDES TO THE CLERK THE NAMES OF AT LEAST ONE PLAINTIFF AND ONE DEFENDANT IN THE ACTION AND PROVIDES TO THE |

CLERK THE ADDRESS, INCLUDING ANY APPLICABLE APARTMENT, UNIT OR SPACE NUMBER, OF THE SUBJECT PREMISES OR, (2) PROVIDES TO THE CLERK THE NAME OF ONE OF THE PARTIES IN THE ACTION OR THE CASE NUMBER AND CAN ESTABLISH THROUGH PROPER IDENTIFICATION THAT HE OR SHE LIVES IN THE SUBJECT PREMISES. ACCESS TO THE COURT INDEX, REGISTER OF ACTIONS, OR OTHER RECORDS IS NOT PERMITTED UNTIL 60 DAYS AFTER THE COMPLAINT IS FILED EXCEPT PURSUANT TO AN EXPARTE ORDER UPON SHOWING OF GOOD CAUSE THEREFORE... (SECTION 1161.2 CCP) THE ABOVE RESTRICTIONS DO NOT, HOWEVER, AFFECT OR ALTER YOUR RIGHTS OR RESPONSIBILITIES TO RESPOND TO THIS ACTION WITHIN THE TIMES PRESCRIBED BY LAW. _____ FOR ADDITIONAL INFORMATION YOU MAY CONTACT THE GREATER BAKERSFIELD LEGAL ASSISTANCE, INC. AT (661) 325-5943 LOCATED AT 615 CALIFORNIA AVENUE, BAKERSFIELD, CA 93304. FOR SELF HELP INFORMATION YOU MAY CONTACT THE KERN COUNTY LAW LIBRARY AND SELF HELP CENTER AT (661) 868-2532 LOCATED AT 1415 TRUXTUN AVENUE, 3RD FLOOR, BAKERSFIELD, CA 93301. OUTSIDE OF BAKERSFIELD YOU MAY CONTACT THE CALIFORNIA RURAL LEGAL ASSISTANCE AT (661) 725-4350 LOCATED AT 601 HIGH STREET, SUITE C, DELANO, CA 93215.

NOTICE OF ORDER TO SHOW CAUSE RE: CRC RULE 3.15.1(c)  NOTICE OF ORDER TO APPEAR AND SHOW CAUSE WHY THIS MATTER SHOULD NOT BE DISMISSED RE: LOCAL RULE 3.15.1(c) TO PLAINTIFF AND PLAINTIFF'S ATTORNEY OF RECORD, IF ANY: YOU AND EACH OF YOU ARE ORDERED TO APPEAR BEFORE THE COURT ON Aug 06, 2014 AT 1:30 PM IN DEPARTMENT 12 OF THE ABOVE ENTITLED COURT, then and there to show cause, if any you have, why this matter should not be dismissed. All appearances are mandatory, unless five (5) court days prior to hearing date the court has received an amended complaint converting the action to an ordinary civil action, a request for dismissal, a judgment or a notice of settlement, then no appearance is necessary. WARNING! IF YOU FAIL TO APPEAR AS ORDERED HEREIN, THIS ACTION WILL BE DISMISSED WITHOUT PREJUDICE (C.C.P. 575.2). Date: _____  _____
LINDA S ETIENNE Judge of the Superior Court

5/6/2014   **CIVIL CASE COVER SHEET PLAINTIFF 1 RETURNED VIA KLEIN DENATALE GOLDNER BIN**
COMPLAINT/UNLAWFUL DETAINDER ACTION BASED ON CODE OF CIVIL PROCEDURE SECTION 1161a PLAINTIFF 1 RETURNED VIA KLEIN DENATALE BIN

Back          Print

© 2008 - 2014, Superior Court of Kern County          |          Last Modified 10/15/2014          |          Disclaimers          |          Privacy Policy